S. N. Castle *et al. v.* G. H. Luce, Tax Collector.

---

## SUPREME COURT—IN BANCO.

### JANUARY TERM—1878.

*Harris, C. J., Judd and McCully, J.J.*

---

S. N. CASTLE ET AL. *vs.* G. H. LUCE, TAX COLLECTOR.

---

#### ON EXCEPTIONS TO OVERRULING DEMURRER.

THE PLAINTIFFS ALLEGED that the Haiku Sugar Company and the Wailuku Sugar Company were incorporated under the general law, and paid in full on the island of Maui all the taxes assessable to said corporations upon their real and personal property for the year 1877, and that thereafter, on November 30, 1877, the plaintiffs, who were owners of shares of stock in said corporations, respectively, were assessed upon the same as personal property the sum of $662.50, which sum they paid to the defendant under protest. The defendant demurred to the complaint.

S. N. Castle et al. v. G. H. Luce, Tax Collector.

The Court held that the assessment to the plaintiffs and payment by them of the tax to the defendant as alleged, after the said assessment and payment on Maui, accomplished double taxation and was illegal and void, and that the plaintiffs could recover the amount they claimed; and the demurrer was overruled. The case of Bishop vs. Judd is distinguished by JUDD, J.

Opinion of the Court by HARRIS, C. J.

The plaintiffs make known that they are the owners of five and two-thirds shares of the Haiku Sugar Company, a corporation created under the general laws for the establishment of corporations in this country, and doing business as planters and manufacturers of sugar on the island of Maui, and likewise of certain other shares in the Wailuku Sugar Company, doing business as above set forth, on the island of Maui.

It is averred that said two companies have been assessed all the taxes assessable by law on their real and personal property on the island of Maui, and that the said taxes have been paid; and, in addition to the taxes thus paid, the Tax Assessor of the City of Honolulu had assessed the plaintiffs in all the sum of $662.50, to wit: $212.50, which is an assessment on a valuation of $28,333.33 for the shares in the Haiku Sugar Company, and $450, which is an assessment on a valuation of $60,000 for shares in the Wailuku Sugar Company, and in due course the defendant—who is Collector of Taxes of the City of Honolulu—called on the plaintiffs for the said taxes on the 30th of November, 1877, and that the plaintiffs paid said taxes under protest.

The defendant put in a demurrer, the effect of which is to admit the facts set forth by plaintiffs and to deny their sufficiency in law.

The Attorney General submitted the following brief:

I.   This action does not lie against the Tax Collector, for he is required to pay over his receipts to the Treasury, and should not hold money indefinitely, at his own or the public risk. It is not averred that the protest was made before payment, and this cannot be inferred. No payment can be recovered, unless

made involuntarily, or under threat of process, 57 Me., 393. "One of the conditions precedent for recovery always is payment made upon compulsion, to prevent the immediate seizure of goods, or arrest of the person. Unless these conditions concur, payment under protest will not give a right of recovery." 2 Dillon's Munic. Corp., Section 751.

II. The tax was authorized by the statute. "The shares of the several members in the stock of any incorporated company, whether owning real estate or otherwise, shall be deemed in law personal property." Civil Code, Section 145. "All personal property shall be subject to an annual tax * * to include * * stocks in corporations * *." *1b.*, Section 483, as amended in 1876. All real property is "to be assessed in the district where situate." *1b.*, Section 484.

The real estate, then, and other property which is part of it, must be taxed, in its district, to the corporation. The shares as personal property (not being owned by the corporation) must be taxed by the statute, and the holder only is taxable for them.

III. Taxing shares of stock of corporations is not double taxation, because of the taxes paid on the corporate property, in the sense of taxing the same person twice for the same property; and duplicate taxation of property in different ownerships is not prohibited by the fundamental law here or in the United States or England. This result is incidental to all taxation of personal property.

"Taxation of personalty leads to duplicate taxation in various ways. Other taxes besides those by valuation, reach such property, being laid in the shape of duties, excise and license fees, etc.; and, moreover, when property is moved from one jurisdiction into another, where the time fixed for assessment is different, it may, for that reason, be twice assessed for a tax on valuation for the same period of time." Cooley on Taxation, Section 4, page 28.

"There is no imperative requirement that taxation shall be

equal. If there were, the operations of Government must come to a stop, from the absolute impossibility of fulfilling it. The most casual attention to the nature and operation of taxes will put this beyond question." *Ib.*, 124..

"Instances in which property is taxed more than once are not very infrequent. Formerly it was the case in respect to that large amount of indebtedness secured by mortgages, where the debt was liable to taxation against the creditor, and the property by which the debt was secured was also taxed against the mortgagor. In cases where the language is clear, the fact that it imposes double taxation will never justify a Court in disregarding it." Toll Bridge Co. *vs.* Osborne, 35 Conn.. 19..

In the Delaware Railroad Tax, 18 Wall, 219, it was claimed that a tax on stockholders' shares was, in effect, a tax on the property of the corporation which the shares represent. The Court admitted, that if this were true, "there would be difficulty in sustaining the validity of the tax." "But," said the Court, "the share of a stockholder is, in one aspect, something different from the capital stock of the company; the former is the individual interest of the stockholder, constituting his right to a proportional part of the dividends when declared, and to a proportional part of the effects of the corporation when dissolved after payment of its debts. Regarded in that aspect it is an interest or right which accompanies the person of the owner, having no locality independent of his domicile."

In Van Allen *vs.* The Assessors, 3 Wall, 575, the right of the State of New York to tax shares of National Banks, was disputed, on the ground that the bank capital consisted wholly of stock and bonds of the United States, which by law were exempt from taxation. The Supreme Court of the United States sustained the tax on the ground that "the tax on the shares is not a tax on the capital of the bank." That decision has been followed by several other decisions to the same effect.

S. N. Castle *et al. v.* G. H. Luce, Tax Collector.

Bradley *vs.* The People, 4 Wall, 575; National Bank *vs.* Commonwealth, 9 Wall, 353.

In Commonwealth *vs.* Hamilton Manufacturing Company, 12 Allen, 302, the question was whether an Act was constitutional which required the cash value of the capital stock of a corporation in excess of the value of its real estate and machinery to be taxed to the corporation itself. The Court, Bigelow, C. J., held that such tax was constitutional, and said: " We cannot say that a reasonable construction of the statute necessarily leads to the conclusion that the assessment is in fact a tax on the property of the corporations therein designated, and not an excise or duty laid on their respective franchises. * * * The price for which all the shares would sell, may greatly exceed the aggregate of the corporate property, or it may fall very far short of it. Undoubtedly the amount of property belonging to a corporation is one of the considerations which enters into the market value of its shares; but such market value also embraces other essential elements. It is not made up solely by the valuation or estimate which may be put upon the corporate property, but it is the estimate put on the potentiality of a corporation, on its capacity to avail itself profitably of its franchise, and on the mode in which it uses its privileges as a corporate body, which materially influences and often controls its market value.

"The shares in a corporation may have a market value, and sell for a high price before any of its capital stock has been paid in, or it has acquired any corporate property. * * * These illustrations serve to show that an assessment, based on the market value of the shares of a corporation, or of an aggregate of said shares or capital stock, cannot be properly deemed a tax on the property of the corporation. * * * That this was the theory on which the statute was founded is made manifest from the fact that the tax is not based on the capital stock paid in, nor yet on the par value of the shares, but on the aggregate value of the shares, ascertained by the

price paid in the market for the shares when sold as the separate property of the stockholders. * * * These shares were declared by the statute to be personal property, for the purpose of taxation; this tax on shares was clearly not a tax on the property of the corporation, but on the right or interest of each stockholder in the whole corporate organization, its franchise and privileges." The same Court held in Tremont Bank *vs.* City of Boston, 1 Cush. 142, that the real estate of a bank is taxable, in addition (see 10 Met. 338) to the tax paid by the bank on its capital stock. The counsel for the bank, Benj. R. Curtis, contended that the capital of the bank including its real estate, was taxable as personal property to the stockholders, so that the property, although in different forms, was taxed twice. The counsel for the city, P. W. Chandler, stated that manufacturing corporations had been taxed in the same way until the Act authorizing a deduction from the value of its real estate to be made from the value of shares, and that railroads are still so taxed. The Court said, that as no statutory provision was made for deducting the value of corporate property in case of banks, as it was with manufacturing corporations, both the bank shares and its real estate were taxable by law.

In Cumberland Marine Railway *vs.* Portland, 37 Me., 445, the corporation claimed that it was illegally taxed for its corporate property, because the shareholders were also taxed for their shares, but the Court held that both were taxable.

In Utica *vs.* Churchill, 33 N. Y., 151, the Supreme Court of that State held that bank shares were taxable to the holders, although the bank capital was invested in United States non-taxable securities.

A like decision was given in Coate *vs.* Society for Saving, 32 Conn., 173, which was affirmed by the Supreme Court of the United States in 6 Wall.

The law is fully summed up in Cooley on Taxation, pp. 169 and 170, viz.: "So a tax on the shares of stockholders in a

S. N. Castle *et al. v.* G. H. Luce, Tax Collector.

corporation is a different thing from a tax on the corporation itself, or its stock, and may be laid irrespective of any taxation of the corporation when no contract relations forbid."

No decisions are cited against this general view, except in New Hampshire, where the statute, in words, prohibits any taxation which may have the result of duplicate taxation.

S. B. Dole, W. C. Jones, and Castle & Hatch were heard *per contra.*

PER CURIAM.

First—It is argued that the collector is not liable, because by the law he is required to pay over the receipts to the Treasury; and the presumption of law is that the defendant has so paid over the amount received; that he has, in fact, done so, and that the declaration avers no protest before payment or even at the time of payment, and no such inference can be made. "But the receipt for the taxes and the protest bear the same date and appear to have been made simultaneously, and it is an old principle that when two things are done at the same time, that which ought to have been done first must be presumed to have been done first; and though no action would lie against the collector for money paid by him into the Treasury when he was acting in good faith, and no protest was made at the time of payment, it is otherwise if a protest is made at the time of payment, because a protest is a notice not to pay over, and notice of an intention to sue; and in this case such notice was followed by an immediate suit, the payment and protest having been made on the 30th of November, and the suit commenced on the 31st of December following." Elliot *vs.* Swartout, 10 Peters, 137. This protest is made for a distinct and definite cause against a particular tax, alleging as cause of protest the illegality, and pointing out the reason of its illegality, namely, that it had been once assessed and paid at Maui. It was not a mere fault-finding and grumbling, and it appears to have been seasonably and properly made. For any defect or irregularity in assess-

ing the taxes or excess in valuation, the party must appeal to the Appeal Board. This is not a defect or irregularity, but the assessment of this particular tax is averred to be wholly void and a nullity. As the Collector had authority to levy summarily on the goods and chattels of the plaintiffs by distress, the payment made must be regarded to have been made under a kind of duress.

In the case of Sereno E. Bishop *et al. vs.* C. H. Judd Assessor of Taxes for Honolulu, it was urged before the Court, that because the plantation property was fully taxed in the district where situated, and stocks in corporations were likewise to be taxed as personal property, the constitutional provision of the 14th Article was infringed. It was shown in the decision rendered in that case that no infringement on the Constitution was thus made. That proposition will be maintained in the decision which we are now rendering. It was likewise shown that a full taxation of the real and personal property of a corporation might not represent its taxable property, and in the case of a plantation it might well happen that the valuation placed upon the land and material in the district where the plantation is situated might not represent all the property of the corporation to which the plantation belongs. Now this is most certainly true. The law, therefore, is not in violation of the constitutional provision, and it is the application of the law to which we shall now devote our attention. With a fuller argument and the fuller consideration which we are enabled to give it, some of the views expressed by the Court in that case may appear to be somewhat modified, yet it will be found that the principles enunciated in that case are fully supported, and we trust now to make our views so clear as to justify the law and render all future litigation, on cases similar to that now under contemplation unnecessary, premising, however, that we do not propose to go further than is necessary to decide the case now before us.

It is said that this tax is authorized by the statute because

S. N. Castle *et al. v.* G. H. Luce, Tax Collector.

that "the shares of the several members of the stock of any incorporated company, whether owning real estate or otherwise, shall be deemed in law personal property." Civil Code, Section 1446.

The fact that this statute says that shares are to be regarded as personal property, does not affect the mode of taxation. The effect of that statute is merely to direct how such property should be treated in its general relation to the law regarding its descent, mode of transfer, dower right. It does not affect the question as to whether the property is to be taxed to the corporation in gross or to the shareholders in severalty. It does not, by any means, establish the proposition that the whole of the property of a corporation is to be taxed for its full value, and then the shares are to be taxed afterwards in the hands of the shareholders, nor does it assist in establishing such a proposition.

And, again, we are referred to Section 483 of the Civil Code as amended in 1876, which reads as follows: "All personal property of whatever kind, not the subject of specific tax * * * shall be subject to an annual tax of three-quarters of one per cent., and * * * the term 'personal property' shall be construed to include * * * all stocks in corporations and every species of property not included in real estate."

And again, "there shall be assessed and collected upon all real property within the Kingdom * * * three-quarters of one per cent., to be assessed on the full cash value of the same, to be assessed in the district where situated * * · * " Civil Code, Section 484.

It is said that, that which is plain cannot be construed, and the statute certainly declares that shares in stock companies are taxable to the owners thereof as personal property, and also requires taxation of the real estate in its district. Now the shares, not being corporate property and not being owned by the corporation, can only be taxed to the private owners,

and could not be taxed to the corporation, still less could the corporate property be taxed to the shareholders.

It is further argued that the statute requires shares in corporations to be taxed, and sometimes that we must regard the creation of stock as a creation of a new taxable property; and so it is in some cases and in other cases it is not.

When an association of men get a valuable franchise, a new property is created, which would not be represented in any respect by the real or personal property belonging to the association or corporation, as for instance—a railroad corporation, which might have the right of laying rails through the streets of a town, would have a property in the franchise, which would not be represented by the value of their rails, rolling stock and animals. An aqueduct company which might have the right of breaking up the streets for the purpose of laying down their pipes and condemning lands for the purpose of getting their water supplies, has a similar property, which is not included in the real property which the corporation owns, or in the personal property which is visible and tangible. A ferry, or a gas company, and a bank having the authority to issue notes to pass as money, are instances in point.

But it may well be doubted whether a corporation which may be created like those under contemplation, as a matter of course, places the property in any different position than it was before its owners (partners in business) divided the property into shares, and represented each partner's interest by certificates. The case is best stated in this way : Suppose four persons to own a plantation, the total value of which may be one hundred thousand dollars, each owning an equal interest, and it would be assessed for taxation to-day at one hundred thousand dollars; to-morrow they agree to divide their property into a thousand shares, of which each one holds two hundred and fifty. Is there any new property created? Can its real and personal property be assessed at one hundred thousand dollars, and then the certificates which are

evidence of each person's interest in that property, be assessed at one hundred thousand more? In addition to this, it may be borne in mind that the value of the property for its owners or shareholders is made up of the land which has paid a tax of three-quarters of one per cent., and many other articles which are taxed "specifically," as carts which have a specified tax, also horses, and perhaps some other articles. The facility with which a corporation of this nature could avoid such a tax by surrendering its charter and resolving itself into a simple partnership, would seem to indicate that there was something fallacious in this course of reasoning, and the fallacy consists in this, in supposing that in such a case any new property is created over that which is visible and tangible. If the shares are taxed, then the property which they represent and the persons who own that property have paid the due proportional share of the public expenses which the Constitution requires. So likewise if the stock is taxed in the aggregate and the tax is paid by the officers of the corporation. If the real estate has been taxed in another district, then the stock has paid its proportion to the degree that the real estate has already paid. In other words, a one thousandth interest (one share) in the plantation above indicated, is not worth one hundred dollars and the real estate beside; and if the real estate has paid its taxes, it should be deducted in the estimation of the value of the share.

It is said that the shares are the property which the shareholders own, and not the real and personal property of the corporation. The fact is that the corporation is a fictitious person composed of many natural persons. Now, it is true that the shareholder has no right to the corporate property whilst the corporation exists, and has only a member's voice in the management of it. But how can a man's share of any property have any value whatsoever, except with reference to the amount and productiveness of the property in which he is owner? The certificate of the share is evidence of the share-

holder's interest; it is the title deed and not the property itself, and when all the property which that certificate represents is taxed, the share is fully taxed and the object of the law is accomplished, and if, when the real property and the personal property has been fully taxed, and all the property which that share represents has not been taxed, as will be the case with a bank authorized to issue paper money, then that value so remaining must be taxed too, and the letter of the law would be fulfilled; but it would be difficult to see how an agricultural association, pure and simple, can be the possessor of any property not represented by their ground, tools and machinery, products and the debts due to it, and when those properties have once been fully taxed, the owners of that property have paid their proportion of the public expenses. But it is said, we must give force to every word of the law, and, therefore, the shares are to be taxed irrespective of the fact that all the property represented by those shares has been taxed before. The doctrine, that force is to be given to every word of the law is a true one, but the inference drawn from it is not so clear. The statute does not state that shares in corporations are to be taxed to the holders thereof. It directs that stock in corporations is to be taxed as personal property, and gives no direction as to whether the tax is to be assessed in gross to the corporation and be paid by the officers or in severalty to the shareholders. We have given force to every word of the law when we point out that the law means that stock in a corporation is to be taxed when it represents any property at all over and above that which has already paid the full proportion required of it by law. Let us take a grazing company for an illustration, and suppose its property consists of certain real estate which has already paid tax, say, for twenty thousand dollars, three hundred horses valued at fifteen thousand dollars, six hundred mules valued at twelve thousand dollars. If any other theory shall prevail, this property, which has already paid its land tax and a specific tax

S. N. Castle *et al. v.* G. H. Luce, Tax Collector.

upon each animal, would be obliged to pay still another assessment on forty-seven thousand dollars. This would be so manifest an injustice, that it is not to be adopted by the Court, unless clearly forced to it by the working of the law.

It has been said that a tax on the shares of a corporation is a tax on its privileges, or, as it is sometimes said, on its franchises; but these corporations, now under consideration, have no privileges.

Again, how are these shares to be taxed otherwise than as now indicated? What is the value of a share? It is answered, what it would sell for in the market; that is to say, what some one person or some few persons might be found willing to give for it; that is to say, its speculative value. This will be to tax the hopes of men, for let it be borne in mind we are arguing on the assumption or admission that all the tangible property has already been taxed. It must be admitted that in some kinds of corporations a speculative value is the only valuation that can be attained, because they represent an intangible property. But let a person of sanguine temperament go into the fields of a plantation in July, he might say, this crop, in my judgment, next winter, will produce a thousand tons, and sugar will be worth, when this crop shall be marketed, six cents a pound, and I will give therefore five hundred dollars a share; and now, though another person may think that instead of a thousand it will produce eight hundred tons, and instead of six cents a pound sugar will only bring four, and though the tax assessor has already taken the growing crop into consideration in his assessment, yet the property should be assessed again, and in addition to its real valuation for what the enthusiastic and hopeful individual may be induced to give for a few shares of it. This is assessing it on a speculative value; and the law demands a true valuation, such a valuation as will place the shareholder on, as nearly as possible, an equality with other owners of like property, which is to be done by taxing his property, just as other persons'

S. N. Castle *et al. v.* G. H. Luce, Tax Collector.

property is taxed, and then, if anything remains over of an ascertainable nature, any privileges, any franchises, not visible and tangible, but yet appreciable, that should be taxed too. The object of the law is to tax all of a man's property and no more. It may be that the officers of the several incorporated plantations had property, credits or other valuable assets, not represented in the assessment on Maui; but if it were so, this is not made evident to us. The case is put to us by shareholders as though all the taxes on each piece of property assessable under the law had been paid, and therefore there was nothing for the assessor at Honolulu to assess, and nothing for the collector, the defendant, to collect. It will be observed that Section 483 of the Civil Code, quoted above, enacts that "Stocks in corporations are taxable property." But as has been said, it does not say whether it shall be taxed to the corporation or shareholder. Now all the capital stock in these corporations is represented to us to have been taxed, that is to say, all the property purchased by that capital stock. "Now if that tax still stands — a taxation of the shares at their appraised value, would be in fact a double taxation of the property, once to the corporation itself, and again to the corporators, which would be unjust, oppressive and unconstitutional." Such were the words of Chief Justice Parker in the case of Smith *vs.* Burley, 9 N. H., 423. These words were used in a case exactly similar to that which we have under contemplation and under a statute very similar.

In the case of Smith *vs.* the Town of Exeter, 37 N. H., 558, Perley, C. J., uses the following language : "The whole property of a railroad belongs to the stockholders, who own the road in shares; and whatever is paid by the corporation is, of course, paid out of the property thus held in shares, and is deducted from the property or income of the shareholders. The tax on the corporation is, therefore, in substance, a tax on the shares and on the shareholders. The property of the road consists of the stock, and a tax on the road is in substance a tax on the stock."

S. N. Castle *et al. v.* G. H. Luce, Tax Collector.

And again, in Savings Bank *vs.* Nashua, 46 N. H., 398, it is said: "It is a fundamental principle in taxation that the same property shall not be subject to a double tax, payable by the same party either directly or indirectly, and where it is once decided that any kind or class of property is liable to be taxed under one provision of the statutes it has been held to follow as a legal conclusion that the Legislature could not have intended the same property should be subject to another tax, though there may be general errors in the law, which would seem to imply that it was to be taxed a second time."

We have said above that the law simply says that the stock in corporations is to be taxed and does not say whether it is to be taxed to the corporation or to the shareholders themselves. Now an exact fulfillment of the law would be in this case, for the Maui Assessors and Collector to do just as they have done, and for the Oahu Assessors and Collector to call upon the officers here and require them to list the property of the corporation which he would do by taking into consideration all the items which it had been assessed at Maui and make a return of all the other taxable assets of the corporation, thus the whole stock of the corporation would be listed, assessed, and taxes paid upon it, and this having been done, the whole law is completely fulfilled in letter and spirit, and the shareholders may not be assessed again.

The demurrer is, therefore, overruled. The Attorney General may have leave to answer if there is anything further to urge.

The Attorney General—I have nothing farther.

The Court—Let judgment be entered for the plaintiffs, $662.50, without interest and without costs.

Honolulu, February 9, 1878.

---

OPINION OF JUDD, J.

I agree with the learned Chief Justice, that the demurrer should be overruled. The plaintiff can recover the taxes paid

by him on the shares he holds in the corporation, it being made to appear that the tax has been paid on the capital of the corporation invested in lands, machinery, live stock and the appliances requisite for the production of cane and the manufacture of sugar. This corporation was formed for agricultural and manufacturing purposes. Its charter confers no monopoly, and the corporation has no special privileges or franchises. The grant of this charter created no new money value in itself, distinct from the capital invested in the tangible property held under the charter.

The incidental advantages possessed by all holders of incorporated property, of immunity from personal liability, and the facility with which such property can be transferred, does not give the shares into which the capital is divided a separate taxable value.

The shares we are considering derive their only value from the amount and productiveness of the property of which they are a part.

As this property has been already taxed, to tax the shares would be to duplicate taxation of the same property, and to the same person, indirectly, for the shareholder is a member of the corporation and has to bear his proportion of its expenses, of which the tax already paid on the property of the corporation is one.

The recent case of S. E. Bishop *vs.* the Tax Assessor for Honolulu has not the binding effect of a precedent upon this case at bar, for the reason that the Court could not in the former case give judgment as to which assessment was illegal, the one made upon the corporation for the property held by it, or that made upon the shareholder for the share held by him, and the Court had not the power to elect upon which assessment the tax should be collected. Neither section of the law is of itself unconstitutional, and it was only when the taxes upon both assessments had been paid that this question of double taxation could properly arise. Nor ought that case

in. my opinion to carry authority as an opinion of the Judges submitted at the request of the Cabinet, for the questions involved were not such as are contemplated by Article 70 of the Constitution.

Honolulu, February 9, 1878..

## SUPREME COURT—IN BANCO.

### JANUARY TERM—1878..

*Harris, C. J., Judd and McCully, J.J.*