## SEATTLE BREWING & MALTING CO. v. A. J. CAMPBELL, TREASURER OF THE TERRITORY.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED FEBRUARY 12, 13, 1906.    DECIDED MARCH 5, 1906.

FREAR, C.J., HARTWELL AND WILDER, JJ.

ACTION AGAINST TREASURER—*for money illegally exacted and paid under protest.*

An action may be maintained against the treasurer of the Territory in his private capacity to recover money illegally exacted by him under color of his office and paid under duress and protest and with notice that action would be brought against him for the money. In such case, in the absence of statute to the contrary, he may retain the money to await the result of the action, and if he pays it into the treasury he does so at his peril. The provision of the audit law which requires public accountants to pay weekly into the treasury moneys collected by them does not require the treasurer to pay into the treasury without awaiting the result of litigation moneys collected by him under the circumstances mentioned.

INVOLUNTARY PAYMENT—*what is sufficient to constitute.*

Payment of a license fee by a foreign corporation is made under duress within the law of involuntary payments when it is made under protest upon the demand of the appropriate public officer under a statute which denies a delinquent corporation the benefit of the laws of the Territory.

### OPINION OF THE COURT BY FREAR, C.J.

This case comes here by special leave of the circuit judge on exceptions to an interlocutory order overruling a demurrer. The action is assumpsit to recover back $500. license fees for the two years beginning July 1, 1903 and 1904, respectively, and $250 penalty for previous nonpayment of the license fees, which sums were paid under protest by the plaintiff to the defendant on March 25, 1905, upon the latter's demand for immediate payment thereof, under Section 2625 of the Revised Laws. That section, which has since been slightly amended (by Act 98, 1905), provides that no foreign corporation, except foreign insurance companies, which does not invest and use its capital in the Territory, shall have an office in the Territory unless it shall first have obtained from the treasurer an annual license to do so, for which license it shall pay into the treasury one-fourth of a mill on each dollar of its capital stock which it is authorized to have, but not less than $150 in any case. The treasurer is authorized to collect the amount of the fee, with a penalty of 50 per centum for failure to pay the same, but there is a proviso that no license shall be necessary for any corporation engaged in the business of foreign or interstate commerce or while employed by the government of the United States. The plaintiff alleges that it is a foreign corporation organized under the laws of West Virginia and that during the period in question it invested and used its capital in this Territory and was engaged in the business of foreign and interstate commerce; also that it made the payment under protest in writing, contending that it was not liable because it was not one of the foreign corporations to which the statute was applicable and was engaged in the business of foreign and interstate commerce; and that at the same time it notified the defendant that it would institute suit to recover the money so paid under protest. In support of the demurrer it is contended (1) that the action, if it lies at all, should be brought against the Territory and not against the treasurer, and (2) that in any event no recovery can be had because the payment was voluntary and not under duress.

The action is based on the theory of an implied promise to pay back moneys illegally demanded and paid under compulsion. There can be no recovery if the demand was legal though the payment was compulsory, nor if the payment was voluntary though the demand was illegal. The fact that the payment was made under protest would not alone authorize a recovery. The object of the protest was to save the rights, if any, arising out of the illegality of the demand and the compulsory nature of the payment, by showing that the legality of the demand was not admitted. *Railroad Company v. Commissioners,* 98 U. S. 541, 544. We must assume on demurrer that, as shown by the complaint, the plaintiff was not within the statute and that therefore the demand was illegal. Assuming also for the present that the payment was involuntary, the first question is whether, if there was an obligation to refund, it rested on the defendant or the Territory.

If the defendant had paid the money into the Territorial treasury and was justified in doing so and the action were against him in his official capacity for the purpose of reaching such money in the treasury, it would be a mere ruse for an action against the Territory, and, if it would lie at.all against him nominally, in order to reach the Territory really, it would have to be brought in the supreme court like other actions brought against the Territory by its consent, and payment of the judgment if the action were sustained would have to await an appropriation by the legislature. *Smith v. Reeves,* 178 U. S. 436; *Flagg v. Bradford,* 181 Mass. 315. The present action is sustainable, if at all, only as an action against the defendant in his personal or private capacity, based on the theory that the collection made by him was without authority of law and that therefore not only was he under no obligation to pay the money over to the Territory as against the plaintiff, to whom it rightfully belonged, but, being warned that the legality of the demand was denied and that the suit would be brought for the recovery of the money, he was in duty bound to refund it, and if he paid it over to the Territory after such warning he did so at his peril. There is no doubt that ordinarily a common law action for

money had and received, founded upon a promise implied from the duty to refund what is illegally exacted, lies against an officer in his individual capacity under such circumstances. A leading case is *Elliott v. Swartwout,* 10 Pet. 137, in which it was held that customs duties illegally exacted might be recovered in such an action from the collector of customs. This court, following that case, held the same way in *Castle v. Luce,* 4 Haw. 63, which was an action against a tax collector to recover taxes illegally exacted. Numerous similar actions have since been entertained without question. *Hackfeld v. Luce,* 4 Haw. 172; *Turton v. Kapena,* 5 Haw. 278; *Castle v. Luce,* 5 Haw. 321; *Wailuku Sugar Co. v. Aholo,* 6 Haw. 267; *Alexander v. Fornander,* 6 Haw. 322; *McBryde v. Kala,* 6 Haw. 529; *Haiku Sugar Co. v. Fornander,* 6 Haw. 532; *Brewer v. Luce,* 6 Haw. 554; *Union Feed Co. v. Luce,* 7 Haw. 64; *Bishop v. Gulick,* 7 Haw. 627; *Hilo Sugar Co. v. Minister of Finance,* 7 Haw. 665; *Knudsen v. Stoltz,* 8 Haw. 81; *Hilo Sugar Co. v. Tucker,* 8 Haw. 148; *Skinner v. Gulick,* 8 Haw. 189; *Parker v. Shaw,* 9 Haw. 407; *Robertson v. Pratt,* 13 Haw. 590.

But if the treasurer were required by statute to pay the money over to the Territory immediately and without awaiting the result of litigation notwithstanding the plaintiff's protest, equity and good conscience, which is at the foundation of an action for money had and received, would not require him to refund, for that would be to require him to pay twice through no fault of his own. If the statute required him to pay to the Territory the common law would not require him to pay to the plaintiff,—in which case the action would lie, if at all, against the Territory and not against the defendant. *Cary v. Curtis,* 3 How. 236,—in which it was held that moneys illegally exacted for customs duties could not be recovered in an action against the collector in view of a statute, enacted after the decision in *Elliott v. Swartwout,* supra, which provided that moneys paid for unascertained duties or for duties paid under protest against the rate or amount of duties charged should be disposed of as other moneys paid for duties and not held by the collector to await the ascertainment of duties or the result of any litigation

in relation to the rate or amount of duty. That case was followed in *Mallan v. Bransford,* 86 Va. 676 (10 S. E. 978), under a statute which showed clearly that the collector of taxes was to pay them over immediately into the treasury and not await the result of litigation. It was followed also by this court in *Peacock v. Castle,* 11 Haw. 10, under a statute relating to customs duties which was copied from the Federal statute, the court relying in part upon the principle that when one state adopts a statute of another it adopts also the construction put upon it by the courts of the other.

The defendant contends that there are statutes applicable to the present case, similar in effect to those above mentioned, which make it the duty of the treasurer, as a public accountant under the audit law, to pay all moneys collected by him as treasurer into the treasury and not retain moneys paid under protest to await the result of litigation in regard to them. Section 1515 of the Revised Laws provides that "All persons who, by any law, regulation or appointment are charged with the duty of collecting or receiving revenue or other moneys on account of the Territory, or with the duty of disbursing moneys on account of the public service shall become and be 'public accountants,' and shall perform all such duties and render such accounts as this chapter prescribes, and as the treasurer and auditor shall from time to time direct." Section 1520 provides that "Every such public accountant collecting or receiving revenue or other moneys aforesaid in Honolulu shall pay weekly, or at such times as may be otherwise specially appointed, into the treasury all sums of money collected or received by him on account of the revenue or otherwise as aforesaid, accompanied by vouchers bearing his signature, and which such sums shall have been collected or received, and unless otherwise specially directed, shall not later than the tenth day after the expiration of each month, transmit to the auditor a return in the form contained in section 1545, with such particulars in each case as may be required by the auditor, of all moneys collected or received by him during the preceding month, and shall make and subscribe to an oath in the form

prescribed in such section." Section 1526 provides that moneys
shall not be drawn out of the treasury, except in certain cases
of which this is not one, except upon warrants signed by the
auditor or his deputy.   Section 2966 provides that "If any
officer or other person who, by law, regulation or appointment
now is or hereafter shall be charged with the safe keeping,
transfer or disbursement of any money, note or other effects
or property belonging to the Territory of Hawaii, shall convert
the same to his own use or benefit, or to the use and benefit of
another than the owner or person entitled thereto; or shall
loan, with or without interest, or shall deposit in his own name,
or otherwise than in the name of the Territory of Hawaii, in
banks or with any person or persons, or change for other funds
or property, any money or moneys intrusted to his safe keep-
ing, transfer or disbursement, except in the manner prescribed
by law, regulation or appointment, he shall be deemed guilty
of embezzlement," etc.

Assuming that the treasurer is a public accountant within
the meaning of sections 1515 and 1520, notwithstanding that
the former section permits him with the auditor to prescribe
rules for public accountants and that the latter section would
in such case require him to deal with himself, and assuming that
these sections should be construed as covering collections under
color of any law, regulation or appointment as well as under
the authority of any law, regulation or appointment (see *De
Lima v. Bidwell,* 182 U. S. 180), we are nevertheless of the
opinion that these sections do not go to the extent contended.
They do not, like the statutes in the *Cary, Mallan* and *Peacock*
cases, contain express provisions requiring the payment of
moneys into the treasury without awaiting the result of litiga-
tion.   There would be an equal duty to pay such moneys into
the treasury sooner or later even in the absence of a statute
prescribing the times at which they should be paid.   The pro-
visions of sections 1515 and 1520 have been in force during the
period in which nearly all of the Hawaiian cases above cited
were decided, and yet it has never been suggested that they pre-
vented actions of this kind.   They were sections 1 and 2 of
chapter 23 of the Laws of 1882 and sections 29 and 30 of

chapter 39 of the Laws of 1898. When the *Elliott* case was
decided a statute had been in force thirty-seven years which
required collectors "at all times to pay to the order of the
proper officer the whole of the moneys which they may respect-
ively receive," and that they should "once in three months or
oftener if required, transmit their accounts," and the secretary
of the treasury required the collector of New York, who was
the defendant in that case, to pay over moneys received by him
weekly or at short intervals, and yet, although this statute was
called to the attention of the court by counsel (see page 146),
it was not deemed sufficient to abrogate the common law remedy.
Even the explicit statute in the *Cary* case was thought not to
go to that extent by Justices Story and McLean, who supported
their views in vigorous dissenting opinions, the latter laying
considerable stress, among other things, upon the fact that the
*Elliott* case was decided as it was notwithstanding the earlier
statute just referred to; and congress, immediately after the
decision in the *Cary* case, altered the law so as to permit suits
against the collector notwithstanding his obligation to pay the
money over to his superior, but such suits were thereafter
regarded not as common law suits but as statutory suits or at
least as suits based on statutory liability in the nature of actions
against the government permitted to be brought against the
collector as matter of favor. See *Peacock v. Castle,* supra. In
*Philadelphia v. Collector,* 5 Wall. 720, it was contended that
certain provisions in the internal revenue laws had an effect
similar to that of the statute referred to in the *Cary* case. One
of these provisions required collectors to pay daily into the
treasury the gross amount of all collections under the internal
revenue acts without any abatement or deduction on account of
claims of any description whatever, but the court did not find
it necessary to say what the effect of those provisions would be
on the common law remedy, because, in the opinion of the court,
it was clear that they were not sufficient to repeal by implica-
tion other provisions from which it appeared that congress
intended that suits might be brought against collectors, such
suits being similar to those allowed by congress under the cus-

toms laws after the *Cary* decision, that is, statutory suits, not common law suits.  See *Collector v. Hubbard,* 12 Wall. 1, 13. Perhaps, even if the provisions of our statutes referred to above were sufficient to preclude the common law remedy under ordinary circumstances, it should not be held to have that effect in a case like the present in which the statute, under which the license fees purport to have been exacted, by its very terms had no application to the plaintiff if the allegations of the complaint are true, as we must presume they are for present purposes.  See *De Lima v. Bidwell,* 182 U. S. 179.

The case of the treasurer is not different in principle from that of other officers, such as collectors of taxes or customs duties, although his connection with the treasury is closer. The theory of the case is that he acted without authority of law and therefore in his private capacity, in which case he as well as any other officer could retain moneys illegally exacted and paid involuntarily and under protest to await the result of litigation.  In *Scotttish U. & N. Ins. Co. v. Herriott,* 109 Ia. 606, the statute provided that foreign insurance companies should pay certain taxes "into the state treasury" as a condition of their doing business within the state.  A British company paid the taxes to the state treasurer under protest upon the demand of the state auditor.  It was held that an action would lie against the treasurer for the recovery of the amount so paid if the law was invalid.  In *Ratterman v. Express Co.,* 49 Oh. St. 609, an action was sustained against a county treasurer to recover back moneys paid under protest by an express company under a statute which required express companies to pay certain taxes on their gross receipts from interstate business.  See also *Osborn v. U. S. Bank,* 9 Wheat. 738, 837, 843, 845.

There are, no doubt, strong reasons why in point of policy officers should not be allowed to retain moneys collected under color of their offices to await the result of litigation, but, on the other hand, it would be a hardship to require persons who paid such moneys under duress and protest to await action by the legislature in order to recover them after judgment in an action against the Territory as now provided.  A wise middle

course would seem to be to provide, as is done by some federal and state statutes, that moneys collected should be paid into the treasury without awaiting the result of litigation, but that if adjudged to have been illegally exacted they might be paid back without waiting for a special appropriation.

The next question is whether the payment in this case was involuntary. As already stated the mere fact that the money was paid under protest would not authorize a recovery; nor would the mere fact that it was paid unwillingly or reluctantly. It is essential that it should have been paid under compulsion or duress within the meaning of the law of involuntary payments. Perhaps the same degree of duress would not be required as would be required for the purpose of setting aside a conveyance, the execution of which was alleged to have been procured by duress. Probably also forms of compulsion would be considered sufficient under present conditions of commercial activity which would not have been considered sufficient at some earlier periods. Actual or threatened seizure or detention of person or property is not indispensable to constitute duress under all circumstances. In the present case liability to the pecuniary penalty would not alone be sufficient, for even if under other circumstances it would be sufficient, as held by some courts and not by others, it had in the present instance already been incurred when demand for the license fee and the penalty for previous nonpayment was made. Nor is the fact sufficient that nonpayment is made a misdemeanor on the part of the corporation, for, even if making the corporation itself subject to prosecution for a misdemeanor and payment of a pecuniary penalty on conviction would be sufficient, the statute in question provided no penalty whatever and thus rendered the provision nugatory. It has since been amended so as to provide for a fine upon conviction of the corporation and also so as to make the agents of a delinquent corporation guilty of a misdemeanor and subject to fine or imprisonment or both. Act 98, 1905. The statute, however, provides that a delinquent corporation shall not have an office in the Territory for the use of its officers, agents, stockholders or employees, though it imposes no special penalty for having such an office without payment of a

license fee, but it is specifically provided that "every foreign corporation failing to comply with any of the statutes regarding foreign corporations  * * *  shall be denied the benefit of the laws of the Territory, particularly the statute limiting the time for commencement of civil actions or of criminal actions, and shall not be entitled to sue, plead or appear, except as herein below provided, in any court of this Territory for any cause of action whatever, while such neglect or refusal continues; provided, however, that the court may grant, in its discretion, additional time within which to comply with the statutes, when it shall appear that said corporation has a meritorious defense to any action brought against it." R. L., Sec. 2626. The effect of this provision is similar to that of provisions elsewhere which forbid the transaction of business within the state by foreign corporations which fail to pay their taxes or license fees and which have been held sufficient to constitute duress. See the Iowa and Ohio cases above cited. In *Robertson v. Frank Brothers Co.,* 132 U. S. 17, the court, in referring to an earlier case, said:

"In that case, it is true, the fact that the importer was not able to get possession of his goods without making the payment complained of, was referred to by the court as an important circumstance; but it was not stated to be an indispensable circumstance. The ultimate fact, of which that was an ingredient in the particular case, was the moral duress not justified by law. When such duress is exerted under circumstances sufficient to influence the apprehensions and conduct of a prudent business man, payment of money wrongfully induced thereby ought not to be regarded as voluntary. But the circumstances of the case are always to be taken into consideration. When the duress has been exerted by one clothed with official authority, or exercising a public employment, less evidence of compulsion or pressure is required,—as where an officer exacts illegal fees, or a common carrier excessive charges. But the principle is applicable in all cases according to the nature and exigency of each."

See also 2 Page, Contr., Sec. 798 et seq.; 22 Am. & Eng. Enc. of Law, 2nd Ed., 612 et seq.; 27 Id. 757 et seq. In our opinion the payment in question should be regarded as involuntary.

The exceptions are overruled.

*A. G. M. Robertson* for plaintiff.

*M. F. Prosser, Deputy Attorney General,* for defendant;
*E. C. Peters, Attorney General,* on the brief.