CHARLES R. BISHOP, SAMUEL M. DAMON, CHARLES M. HYDE, CHARLES M. COOKE and JOSEPH O. CARTER, Trustees of the Kamehameha Schools, *vs.* CHARLES T. GULICK, Collector of Taxes for the District of Honolulu.

APPEAL FROM DECISION OF BICKERTON, J.

SPECIAL TERM, MARCH, 1889.

JUDD, C.J., McCULLY, PRESTON, BICKERTON and DOLE, JJ.

The plaintiffs are wrongly entitled Trustees of the Kamehameha Schools. They are trustees under the will of the late Mrs. Bernice Pauahi Bishop, and the estate belongs to them (in trust) and not to the schools which are the objects of the trust.

The Statute found at page 66 of the laws of 1886, which provides that "Real and personal property belonging to private schools shall be exempt from taxation," is held to mean the premises, buildings, furniture, etc., in the occupation and use of such schools are exempt.

Property of which the income is applied to the support of such schools is not exempt.

OPINION OF THE COURT, BY McCULLY, J. DOLE, J., Dissenting.

The plaintiffs are trustees under the will of the late Hon. Mrs. Bernice P. Bishop.

It is relevant to this case to set forth some of the provisions of the will. Article thirteenth is as follows, omitting some directions as to the regulation of the schools and reports upon the business :

Thirteenth. I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, wherever situated, unto the trustees below named, their heirs and assigns forever, to hold upon the following trusts, namely : to erect and maintain in the Hawaiian Islands two schools, each for boarding and day scholars, one for boys and one for girls, to be known as and called the Kamehameha Schools. I direct my trustees to expend such amount as they may deem best, not to exceed how-

ever one-half of the fund which may come into their hands, in the purchase of suitable premises, the erection of school buildings and in furnishing the same with the necessary and. appropriate fixtures, ·furniture and apparatus. I direct my trustees to invest the remainder of my estate in such manner as they may think best, and to expend the annual income in the maintenance of ·said schools: meaning thereby the salaries of teachers, the repairing buildings and other incidental expenses, and. to devote a portion of each year's income to the support and education of orphans and others in indigent circumstances, giving the preference to Hawaiians of pure or part aboriginal blood : the proportion in which such said annual income is to be divided among the various objects above mentioned to be determined solely by my said trustees, they to have full discretion. * * * For the purposes aforesaid, I grant unto my said trustees full power to lease or sell any portion of any real estate, and to re-invest the proceeds and the balance of my estate in real estate, or in such other manner as to my said trustees may seem best."

\*          \*          \*          \*          \*

The will provides in sundry other articles for annuities and life estates in property which shall afterwards revert to the trustees.

We think the plaintiffs are wrongly entitled in this case "Trustees of the Kamehameha Schools." They are trustees under the will of Mrs. Bishop.

In this action they claim the repayment to them of $2,000 paid to the defendant under protest, as being exempt from taxation, the amount of tax assessed on real property of this trust situate within the defendant's collection district. The lands assessed do not include the premises occupied by the Kamehameha School for boys, the only one yet established. The claim of exemption is derived from these words of Section 20, Chapter XXXVII., of the Session Laws of 1886 : "Real property belonging to * * * private schools * * * shall be exempt from taxation."

The case was tried by Mr. Justice Bickerton, the jury being waived, who gave judgment for the defendant on the authority of *Smith vs. Kockemann, Ex'r*, 3 Hawn., 320. The plaintiffs except to the judgment of the Court. No facts are in controversy.

We quote from the statute under which the exemption is claimed, found at page 66 of the Session Laws of 1886 : "Real property belonging to the King or Queen, to the Government, to the Board of Education for the use of schools, to incorporated or private schools, to the Queen's Hospital, to religious societies for church sites and burying grounds not to exceed five acres in extent, shall be exempt from taxation. Personal property belonging to the King or Queen or to the Government, to the Board of Education for the use of schools, to incorporated or private schools, and to the Queen's Hospital, is also exempt."

The plaintiffs' counsel contends that there is no limitation in the statute to the effect that such real property, in order to be exempt from taxes, shall be used as school premises or (as in case of religious societies) for "sites" and "burial grounds not to exceed five acres in extent," nor is there any requirement such as is contained in English and American statutes to the effect that the property must be "occupied" or "used exclusively" for such educational purposes.

That the statute uses the word "belonging" of the King and Queen, Government, Board of Education, Queen's Hospital, and religious societies as well as of "incorporated or private schools." That as unincorporated private schools cannot technically own anything, the word "belonging" in reference to such schools must mean "appertaining to," "relating to," and that it would be a forced and unnecessary construction to say that in this connection the word "belonging" is limited to "sites" and "grounds" for school buildings, when the statute does limit it with reference to religious societies. That the maxim well applies, *expressio unius est exclusio alterius*. That the intention seems to be clear, that all real property used for school purposes shall be exempt; that it is so used when its income is applied solely to these purposes.

In view of the provisions of the will, it cannot be a question whether the real estate which has been assessed "belongs to," in the sense of being the property of, the schools which the trustees are directed to establish and maintain, or to the trustees to whom it is devised.  And it cannot be a question that the word "belonging" has the meaning of "being the property of" the King or Queen, the Government, the Board of Education, and of each other mentioned exempt person or body, except only private schools, and these only because a private school is not an entity capable of the ownership of property.  Only persons or corporations can have property "belonging to," that is, owned by them.  Yet private schools are in two places in this Act exempted from taxes on property "belonging" to them.

In *Green vs. Wood*, 7 Q. B. Rep., 178, Lord Denman said: "We are bound to give to the Acts of the Legislature all possible meaning which is consistent with the clear language used. But if we find language used which is incapable of a meaning we cannot supply one.  It is true that the words as they stand are useless (a case perhaps not infrequent).  We can do no more than give such a meaning as the words authorize."

*Nosciter a sociis*, the meaning of a word may be ascertained by reference to the meaning of words associated with it, and the rule of Lord Bacon, that *copulatio verborum indicat acceptationem in eodem sensu*, the coupling of words together shows that they are to be understood in the same sense, are applicable rules here.  By the latter of these, the copulation of "belonging" with each of several items without discrimination shows that it has the same sense as to each; by the former the association of "belonging" with something which cannot be the owner of anything, allows that it be given another meaning consistent and possible with this case, a certain favorable construction, *ut res magis valeat quam pereat*.  But a tax exemption must be strictly construed.  Taxation is the rule, the exception of exemption must appear clearly in the statute.  Cooley on Taxation, p. 146: "It is a familiar principle that no exemption from taxation can be allowed except upon its being fairly shown that it was in-

tended by the terms of the statute." *Third Cong. Ch. vs. Spring-field, Mass.*, October 9, 1888, reported in the *Northeastern Reporter.*

The assessor has given the buildings and the curtilage used and occupied by the school, and not used as a source of revenue for the school, the benefit of a certain construction of the word "belonging," and has exempted them from taxation.

If this should be considered sound in a case raising the question of the exemption of such premises, the statute would not be useless as to private schools.

Upon the only question before us, whether the other real estate held by the trustees is exempt, every case adduced by counsel for the plaintiffs, as well as the defendant, fails of being quite applicable, in this, that they are cases of corporate bodies, such as incorporated churches, charitable institutions and schools, being bodies capable of holding property. The exemptions are under statutes. The cases hold a strict construction of them.

In *St. Andrew's Hospital vs. Shearsmith*, 19 Q. B., 624, July, 1887, where a profit was made by the treatment of wealthy pay patients in a charity hospital, which was applied in part to the maintenance and treatment of poor patients and the remainder to making improvements on the hospital : Held, that the profits were not, by reason of such application of them to the purposes of the hospital payments, "applied to charitable purposes only," so as to exempt the institution from payment of income tax.

In *First M. E. Church vs. Chicago*, 26 Ill., 482, the statute exempting every building erected for the use of any library, religious or benevolent institution, the plaintiff church claiming exemption as to the whole building, of which only the upper part was used for religious purposes, the lower part being let for revenue : Held, that premises must be used directly for religious purposes. That it is not enough that the profits or income of the secular uses are to be applied to sacred purposes. That when money is made by the use of the building, that is profit, no matter to what use the money may be applied.

In *Trustees of the Good Shepherd vs. Boston,* 120 Mass., 212, held that in order to exempt real estate of a body corporate for religious and charitable purposes, it is not enough that the income derived should be applied to purposes for which it was incorporated, it must be occupied for those purposes.

In *Third Cong. Soc. vs. Springfield,* cited above, held that a parsonage built on the church premises and let free of rent to the pastor was not exempt as being used for religious purposes. That funds for the support of the ministry, held by a religious society, are taxable whether invested in real or personal estate. The case cites a line of authorities besides the Mass., in the N. J. and Minnesota Reports.

The statutes of Massachusetts, Illinois and Michigan seem to expressly limit the property of incorporated schools, which may be exempted, to property by them in actual use or occupation, and not leased for profit. And the cases cited for the plaintiffs turn upon the question of what is actual use and occupation, *e.g.,* whether a farm being cultivated by the students, the products being consumed by the school, is a use and occupation which allows exemption. They are aside from the issues in this case. *Monticello Female Seminary vs. People,* 106 Ill., 398; *Sisters of Charity vs. City,* 9 Mich., 93; *Mt. Herman Boys' School vs. Inhabitants,* 145 Mass., 139.

In *Smith vs. Kockemann,* 3 Hawn., 320, the facts are, in an important particular, not parallel to the case in hand. Property had been devised to the Bishop of the Roman Catholic Church in trust for the use and benefit of the Roman Catholic Church. The Court held, against the contention that it was a benevolent institution, that the Roman Catholic Church or any other church did not come within the terms of the then existing statute exemptions, viz., "religious societies for church sites, burying grounds and houses of education and literary and benevolent institutions;" and that the property, while it remained in the trust and was not appropriated to an exempted object, would not be exempt, concluding that "whatever property can be legally exempted must be set aside and become part and

parcel of the object itself, or dedicated for its promotion." Private schools, however, are in terms an exempted object, and may derive benefit from the Act if the view is held that what is in their use "belongs" to them. But this question we have said is not before us, and the case cited supports the decision of the Lower Court.

The judgment for the defendant is affirmed.

*A. S. Hartwell*, for plaintiffs.

*C. W. Ashford* (Attorney-General), for defendant.

---

### DISSENTING OPINION OF DOLE, J.

This is an appeal from the decision of Mr. Justice Bickerton, jury having been waived, based upon the decision of the Court in *Smith vs. Kockemann*, 3 Hawn., 320. The majority of this Court, without stating very definitely whether they rely upon that authority, base their conclusions mainly upon the ground, that because a " private school " cannot own property, therefore no property can belong, using the language of the statute, to such a school, and the statutory exemption in favor of private schools has no effect.

I am unable to adopt this construction of the statute, because, as it seems to me, the intent of the legislature to exempt all property devoted to the maintenance of private schools is perfectly obvious. To insist upon giving the word "belonging" the meaning of owning, in the sense of having a legal title, defeats the plain intent of the Legislature, and is unnecessary, the word being capable of other constructions which will carry out the evident intent of the Legislature. For instance, the word belonging is familiar to legal phraseology in a more general sense, and is very commonly used in conveyancing with the meaning of appertaining or relating to, which is probably the meaning with which it was used by the legislature in the statute in question. " The interpretation which renders a statute null and void cannot be admitted ; it is an absurdity to suppose that

after it is reduced to terms, it means nothing. It ought to be interpreted in such a manner, as that it may have effect, and not to be found vain and illusive." (Vattel's 15th Rule.)

Other grounds for believing that the legislature used the word in this sense, are afforded by the context. In Section 1 of Article IV. of Chapter II. of the "Act to Organize the Executive Department," passed April 27, 1846, the word "pertaining" is used in a similar connection, *i.e.*: "The chattel property enumerated in this Article pertaining to private individuals, * * * * shall be liable to taxation," etc. Section 485 of the Civil Code, which was the existing law under which the decision in the *Smith vs. Kockemann* case was made, after providing for the exemption of "real property belonging to the King," etc., contains the following sentence in which the word "relating," is, to all appearance, used synonymously with the word "belonging," in the earlier part of the Section : "Personal property relating to the same persons and objects is also exempt." The present statute has changed the word "relating" to "belonging" in the latter provision in regard to personal property. This free use of the word "belonging" interchangeably with its synonyms "relating" and "pertaining" points irresistibly to the conclusion that the legislature used it in the sense expressed by its synonyms, "relating" and "pertaining."

The context supports this view, even more forcibly, upon still another ground. All of the statutes upon exemption, from and after the year 1882, provide that personal property "belonging" to the Queen is exempt from taxes. The only Queens known in the history of this country have been the wives of reigning Kings, and the position of queen was in such manner filled and existing upon the occasions when this provision was passed and revised. Such a queen, being a married woman, was by the statute existing at the time the exempting statute was enacted and ever since until the year 1888, rendered incapable of owning personal property ; it may be truly said that she was as incapable as a "private school" of owning such property. The legislature must have known of this, having previously passed the

statute affecting the status of married women, and yet they enacted the provision that personal property "belonging" both to the Queen and to private schools should be exempt from taxes; and they kept this exemption on the statute books until the year 1888, reiterating it during that period by the tax law passed in 1886. This may be reasonably argued to be a legislative construction, or a construction from usage, of the sense in which the word "belonging" has been used in these statutes. It is an established principle of interpretation, that long continued acceptation of a certain meaning of a doubtful word or phrase in statutes and the conduct of affairs agreeably to such meaning, is evidence of the intent of the lawmakers.

The Crown lands are exempted from taxation presumably under the provision of law exempting " property belonging to the King;" but the legal title to the Crown lands is in the Crown Commissioners, who are trustees created by law for this purpose, and who alone have the power to lease the same, and in case of sale of such lands as may be authorized by the legislature, alone execute the necessary conveyances. The King has only a life interest in the revenues of these lands and no right of possession to the same; therefore if the principle laid down by the majority decision in this case is applied to the Crown lands, they would be liable to taxation as they do not belong to the King and are not otherwise exempted. The same principle would render liable to taxation all of the property placed by His Majesty in the hands of trustees for the payment of the Aki claim and other debts, during the continuance of the trust, as the legal title of such property is not in His Majesty but in his trustees. It may be further argued as evidence of the meaning with which the legislature used this word, that when this law was first passed and for a long time afterwards, an "incorporated school," "religious society," "house of education," "literary or benevolent institution," was the exception, while the existence of such enterprises in an unincorporated status was common.

In the case of *Smith vs. Kockemann*, above referred to, it does not appear that the Roman Catholic Church in the Hawaiian

Islands was at that time a corporation. The fact that such a question was not raised in that case is strong negative testimony that the construction of the word "belonging" in its more general sense was the usage at the time. It is still more to the point that the Court in that case close their opinion with the following sentence, which in its last four words offers further testimony to the general sense in which the word "belonging" was then understood : "But in our view it is clear that whatever property can be legally exempted must be set apart and become part and parcel of the object itself, or dedicated for its promotion." These words, "dedicated for its promotion," express a reasonable and intelligent construction of the law, and if now adopted would be found inconsistent with the decision appealed from.

It is understood that the exemption claimed is this case refers only to that portion of the property of the Bishop Estate not directly occupied by the Kamehameha Schools in the way of school buildings and grounds and furniture. A number of authorities are referred to, both in the majority decision and the brief of defendant's counsel, to show that even if it were admitted that the Kamehameha School enterprise might have the benefit of the law of exemption, it could not be applied to any of the property appropriated for the maintenance of the schools, except that portion actually occupied and in use as school buildings, grounds and furniture.

I have examined carefully every available authority so referred to and find that only one case—that of *N. W. University vs. People*, 80 Ill., 333, quoted in the brief of defendant's counsel— is decided under the provisions of a statute similar to ours. All the rest are under statutes of exemption which, unlike the provision of the Hawaiian law referring to schools, expressly limit the exemption to certain specified property. For instance, the Massachusetts statute, under which the cases of *Trustees of the Good Shepherd vs. Boston*, 120 Mass., 212, and *Third Cong. Soc. vs. Springfield*, N. E. Rep., 9th October, 1888, referred to in the opinion of the majority of the Court, and the cases of *Wesleyan*

*Academy vs. Wilbraham*, 99 Mass., 599, and *Pierce vs. Cambridge*, 2 Cush., 611, referred to by defendant's counsel, were decided, reads as follows: " The personal property of literary, benevolent, charitable and scientific institutions within the commonwealth, and the real estate belonging to such institutions, occupied by them or their officers for the purpose for which they were incorporated," shall be exempt from taxation.  General Statutes of Mass., Chapter XI., Section 5.  And in Chapter XXXII., Section 5, referring to similar institutions : " Their estate shall not be exempted from taxation in any case where    *    *    *    any portion of such estate is used or appropriated for other than educational, literary, benevolent, scientific, charitable or religious purposes." The case of *First M. E. Church vs. Chicago*, 26 Ill., 482, referred to by defendant's counsel, was decided under a statute which exempted only such real estate as was actually occupied by such institution, or held by them and not used for profit.  The two New Jersey cases—*First R. D. Church vs. Lyon*, 32 N. J. Law, 360, and *Nevin vs. Krollman*, 38 *Id.*, 323, referred to by defendant's counsel, were decided under a statute that excepted " the endowment or fund of any religious society " from taxation.  Under this provision the plaintiffs in the first case claimed that a parsonage belonging to the church was exempt, but not being able to convince the Court that real estate was an " endowment or fund," judgment went against them ; the other case was disposed of on a similar point. In the case of *Church of the Redeemer vs. Axtell*, 41 *Id.*, 117, the law exempted " buildings erected and used for religious purposes ;" and the plaintiff contended that because the parsonage was built on the same lot with the church, it was therefore exempt from taxation, which view was naturally not adopted by the Court.  The case of *Library Association vs. Pelton*, 36 Ohio State, 258, referred to by defendant's counsel, was decided under a law which makes the following limited exemption of real estate : " All buildings belonging to institutions of purely public charity, together with the land actually occupied by such institutions, not leased or otherwise used with a view to profit."

Almost the same status existed with regard to the case of *Tucker vs. Ferguson*, also quoted in the brief of defendant's counsel. The case of *St. Andrew's Hospital vs. Shearsmith*, 19 Q. B., 624, referred to in the majority opinion, decides that a hospital that collects fees from well-to-do patients was not a charitable institution within the statute exempting charitable institutions from taxes.

The one case of all that have been referred to as sustaining the defendant's contention, which was decided under a similar statute to ours, is that of *N. W. University vs. People*, 80 Ill., 333, above noted; but unfortunately for the defendant's position this case was disposed of purely on the ground that the General Assembly or Legislature were not competent "to exempt from taxation property owned by educational, religious or charitable corporations which was not of itself used directly in aid of the purposes for which the corporations were created, but which was held for profit merely, although the profits were to be devoted to the proper purposes of the corporation," because the powers of the General Assembly were limited by the following words of the Constitution: "The property of the State and counties, both real and personal, and such other property as the General Assembly may deem necessary for schools, religious and charitable purposes, may be exempted from taxation." The statutory provision which is thus declared unconstitutional, reads: "All property of whatever kind or description, belonging to or owned by said corporations, shall be forever free from taxation for any and all purposes." The Court admitted that the words of the statute were "broad enough to comprehend" the property in question, which was in the nature of lands and town lots. This statute, like the Hawaiian provision of law exempting the property of schools from taxation, is sweeping in its provisions, containing no limiting words; and had it not been for the limiting words, "may deem necessary," in the Constitution, conferring upon the General Assembly the power to make exemptions by law from taxation, the decision of that case would have been the other way. Under the circumstances, it

seems to me that this case is an authority for the plaintiffs' contention in the issue before this Court. The Court may not make limitations where the law has made none, without infringing upon the prerogative of the Legislature.

These cases quoted as above set forth, in support of the defendant's position before this Court, do not seem to me to be in point, for the reason given, that they are based upon statutes totally dissimilar to ours.

The plaintiffs' counsel correctly argues that *Smith vs. Kockemann* is no precedent for the decision appealed from ; he might have gone further and claimed that it was authority for his own contention, for the law of exemption under which that decision was rendered, excepted from its provisions all property of religious societies except church sites and perhaps burying grounds, while it made no exception in the case of schools, but exempted all real and personal property " belonging " and " relating " thereto. " When a statute makes an exception from its provisions, it is to be presumed that all the exceptions were made that were intended." *McDonald vs. Holmes*, 45 Conn., 157.

I am therefore compelled to dissent from the opinion of the majority of the Court, both on the construction of the statute in question, and upon its application.