JOHN JEWELL, Respondent, *v.* THE NEW YORK CENTRAL AND
HUDSON RIVER RAILROAD COMPANY, Appellant.

*Negligence — a passenger alighting from a moving train at a station, struck by a
train approaching on a track between him and the station — contributory negli-
gence as matter of law — expert medical testimony condemned as speculative.*

A passenger upon a railroad train, upon hearing the trainman announce the
station of his destination, with which he was familiar, alighted while the train
was moving very slowly and upon the point of stopping, and proceeded,
apparently without looking, to walk toward the station, when he was struck
and injured by an express train, which, half an hour behind its time, was
traveling at the rate of at least twenty miles an hour, upon a track, between
the track upon which the train was which he had just left and the station, in
direct violation of a rule of the railroad corporation.

In an action brought by the passenger to recover damages for the injuries thus
sustained by him,

*Held,* that the defendant was guilty of gross negligence, and that the fact that
the engineer of the express train was attempting to pass the train which the
plaintiff had left, before it had come to a full stop, did not lessen the degree of
such negligence, nor relieve the defendant from liability for the consequences
which ensued;

That the fact that the plaintiff might have seen the express train, had he looked
in its direction, while material and important for the consideration of the jury,
did not necessarily preclude a recovery, as a passenger alighting from a train
at a station is entitled to assume that the railroad company will afford him a
safe exit from the train and a free and clear passage to the depot;

That as, upon the evidence, it could not be said with any degree of certainty,
that the accident would have been avoided if the plaintiff had waited until his
train had stopped before he left it, his alighting at the time and in the manner
in which he did could not be said to constitute contributory negligence as
matter of law, but was a circumstance to be considered by the jury in connec-
tion with the other evidence in the case, in determining whether or not it con-
tributed to the accident.

A physician, who had testified to the condition in which he found the plaintiff's
ears, added of his own volition that such condition indicated "a state of chronic
inflammation of the middle ear, extending in many cases to the brain" (it not
having been contended up to this point in the trial that the plaintiff's brain
was in any danger of becoming affected).

*Held,* that it was error for the court to refuse to strike out such statement —
such evidence being speculative and conjectural, and so far prejudicial to the
defendant as to require that a new trial be granted.

APPEAL by the defendant, The New York Central and Hudson
River Railroad Company, from a judgment of the Supreme Court

in favor of the plaintiff, entered in the office of the clerk of the county of Genesee on the 3d day of June, 1897, upon the verdict of a jury for $4,000, and also from an order made at the Erie Special Term and entered in the office of the clerk of the county of Genesee on the 2d day of June, 1897, denying the defendant's motion for a new trial made upon a case containing exceptions.

The plaintiff brings this action to recover damages for personal injuries which he claims to have sustained in consequence of the defendant's negligence.

The accident which resulted in the injuries complained of occurred at the defendant's station in the village of Batavia at about half-past eight o'clock on the morning of September 17, 1894. The plaintiff had arrived that morning from Alexander upon a local train which ran over one of the defendant's branch roads, of which branch Batavia was the eastern terminus. He had frequently traveled upon this road and was entirely familiar with the Batavia depot and its surroundings.

The plaintiff's train came to the depot upon what is known as the "Attica" track, between which track and the depot there was another track for the use of eastward-bound passenger trains running upon the defendant's main line. These tracks were eight and one-half feet apart in front of the depot and ran parallel to each other for some distance to the west, where the Attica track bore off to the south.

When the plaintiff's train was in front of the depot a person standing upon the ground close by the train could see the main track for a distance of 250 feet to the west, and upon going 2 feet farther north, towards the depot, he could see from 350 to 450 feet in the same direction. The train upon which the plaintiff was a passenger consisted of an engine and two cars. The plaintiff occupied a seat in the forward coach, which was a combination car, a portion thereof being used for baggage. As the train drew into the station at Batavia the plaintiff went out on to the platform of his car, and while it was moving very slowly and upon the point of stopping, stepped down to the ground and, as he says, took three or four steps towards the depot, when he was struck by the engine of a passenger train going east upon the main track at a high rate of

speed and received the injuries for which he seeks compensation in this action.

At the close of the plaintiff's case, and again when the proofs were in, the defendant moved for a nonsuit upon the ground (1) that no negligence upon the part of the defendant had been established, and (2) that it appeared affirmatively that the plaintiff was guilty of contributory negligence.

*Charles A. Pooley*, for the appellant.

*O. P. Stockwell*, for the respondent.

ADAMS, J.:

Upon the facts above narrated, as to which there was not much controversy, we are unable to discover how it can be successfully contended that the question of the defendant's negligence was not properly submitted to the jury. The train which struck the plaintiff was at least half an hour behind time and running at a rate of speed which no witness places at less than twenty miles an hour, between the Attica train and the depot, at a time when the latter train had just arrived at the station and was about to discharge its passengers. This was not only gross negligence, but it was in direct violation of one of the defendant's rules, and the fact that the engineer of the express train was endeavoring to pass the other before it had come to a full stop does not lessen the degree of the defendant's negligence nor relieve it from the consequences which ensued. (*Terry* v. *Jewett*, 78 N. Y. 338; *Brassell* v. *N. Y. C. & H. R. R. R. Co.*, 84 id. 241; *Parsons* v. *N. Y. C. & H. R. R. R. Co.*, 113 id. 355.)

But in this, as in all similar cases, the negligence of the defendant is but one of the essential elements of a recovery, and, when we come to consider the equally important question of the plaintiff's freedom from contributory negligence, the case is not altogether free from embarrassment.

From the situation of affairs at the Batavia depot, it is a little difficult to understand how the plaintiff could have come into contact with the train which struck him had he taken the pains to look in the direction from which it was coming before attempting to

·cross the intervening track. That he did not look is pretty evident and is not seriously denied. This omission would, in most instances, establish contributory negligence *per se ;* but the facts of this case call for the application of a somewhat different rule from that which ordinarily obtains.

The plaintiff was a passenger upon one of the defendant's trains. As his train approached the depot the trainman announced 'the station, and the plaintiff thereupon proceeded to leave the car in which he was riding. In doing so he had the right to assume that the defendant would afford him a safe exit from the car and a free and clear passage to the depot; and if, in acting upon this assumption, he failed to observe the approaching train, which he might have seen had he looked, this fact, while material and important for the consideration of the jury, did not necessarily preclude a recovery. (*Brassell* v. *N. Y. C. & H. R. R. R. Co., supra.*)

But it is urged that the plaintiff would not have been injured had he not alighted from his train before it came to a full stop, and here arises the serious question in the case. That the plaintiff did step down on to the ground while the train was in motion is conceded, and that in doing so he was guilty of a negligent act, which, if it in any manner contributed to the accident which followed, would defeat his right of action, is not to be denied. (*Solomon* v. *Manhattan Ry. Co.,* 103 N. Y. 437.)

The important inquiry, therefore, which we have to consider is to what extent, if at all, did the plaintiff's manner of alighting from the train operate to produce the injury of which he complains? because, while his alighting may in itself have been negligent to the last degree, yet, unless it can be demonstrated that the accident would not have happened but for such negligent act, or, in other words, unless that act was the proximate and concurrent cause of the plaintiff's injuries, it does not constitute contributory negligence as a matter of law. (*Distler* v. *L. I. R. R. Co.,* 151 N. Y. 424; *McKeon* v. *The Steinway Ry. Co.,* 20 App. Div. 601.)

In considering this aspect of the case it may be said that if the plaintiff had remained on his train until the eastward-bound train had passed, no accident would have occurred. This, of course, is a self-evident fact, but was the plaintiff bound to do this? He had frequently come to Batavia on this same train and had never before

seen a train passing upon the intervening track. Upon this particular occasion the station was called out by the trainman and no warning was given to the passengers in the forward coach of the approaching train, although it appears that the conductor who was in the rear car saw it coming and went to the door to prevent the passengers in that car from alighting until it had passed. Notwithstanding all this, however, if the plaintiff, in alighting from his car while it was in motion, had come into immediate collision with the other train the defendant's counsel would be entirely correct in his contention that the relation of cause and effect was established with sufficient certainty to constitute the plaintiff's negligence a question of law and not of fact. But this contention is weakened by the testimony of the plaintiff, which was to the effect that although he alighted from the train while it was in motion, it nevertheless came to a full stop before the collision occurred, and in this statement he was corroborated by two or three other witnesses who were in the rear coach, who say that their train ceased to move just as the other train caught up with it.

It follows, therefore, that it cannot be said with any degree of certainty that the accident would have been avoided if the plaintiff had waited until his train had stopped before alighting. For if his evidence and that of his witnesses is to be credited, there was time for him to have alighted from his train after it had come to a full stop, before the other train had reached a point opposite the end of the car from which he alighted. And we are consequently of the opinion that his alighting at the time and in the manner he did was properly regarded by the trial court as a circumstance to be considered by the jury in connection with the other evidence in the case in determining whether or not it contributed to produce the accident which subsequently occurred. The learned trial justice instructed the jury fully and carefully respecting this feature of the case and stated with emphasis and iteration that if the plaintiff's injuries were the natural and proximate result of his alighting while the train was in motion, he could not recover in the action. We are inclined to think, after a careful perusal of the record and a consideration of the somewhat peculiar circumstances of this case, that no error was committed in treating the question of contributory negligence as one of fact, and that the charge of the learned trial

justice upon this subject was as favorable to the defendant as the facts and circumstances of the case warranted.

But having thus disposed of the questions arising upon the defendant's exceptions to the refusal to nonsuit, we find ourselves compelled to grant a new trial by reason of the admission of evidence which was not only improper, but in all probability highly prejudicial.

The plaintiff called as a witness in his behalf a certain Dr. Morse, who it seems had attended him professionally, but not until about a year after the accident. This witness testified to the plaintiff's physical condition at the time when he saw him, and stated that he discovered, among other things, that he was suffering from a purulent inflammation of the middle ear, which was attended with a discharge of offensive matter. This difficulty was one which did not make its appearance until long after the accident occurred, and it was a matter of very grave doubt whether it was not attributable to a catarrhal affection rather than to the accident. But however that may be, the jury were permitted to consider this as one of the elements of damage for which they might award the plaintiff compensation.

During the progress of Dr. Morse's examination he described the condition in which he found the plaintiff's ears, and then, of his own volition, added that such condition indicated "a state of chronic inflammation of the middle ear, extending in many cases to the brain." The defendant's counsel asked to have this evidence stricken out, which request was refused and an exception followed. Up to this point in the trial of the case it had not been claimed or even hinted that the plaintiff's brain was in any danger of becoming affected in consequence of the injuries which he had received, and this witness only spoke of such a result as a remote possibility not likely to occur in this case, but one which sometimes happened "in many cases."

We think this evidence was purely speculative and conjectural and as such it was directly within the condemnation of the rule laid down in the *Strohm Case* (96 N. Y. 305) and in the *Tozer Case* (105 id. 617). That it was prejudicial to the defendant cannot be doubted, for the other injuries of which the plaintiff complains would hardly have warranted the large verdict which the jury ren-

dered. We do not, therefore, feel at liberty to disregard it, or to relegate it to that very convenient receptacle of questionable rulings which is usually denominated "harmless error."

The judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

All concurred, except WARD, J., dissenting.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide event.