On February second, 1902, the plaintiff was injured in a collision on the defendant's belt line in Buffalo. It was a cold, stormy night, and a great deal of snow had fallen and drifted. Objects could not be seen very far through the snow and it continued to storm after the plaintiff left the train. The car in which the plaintiff was seated had the seats arranged so that for a third of the length from either end of the car they were continuous along each side and in the middle third of the car the seats were crosswise. The plaintiff and her aunt sat in the seats crosswise of the car, and after the train had stopped at one of the regular stopping places, and had just got started forward, an engine following in the rear collided with the train by running into the rear end of it. As soon as the headlight was seen approaching, the plaintiff and her aunt got up out of their seats and went forward to the head end of their car. The plaintiff stood there without supporting herself, until the collision occurred, which caused her to sit down involuntarily upon one of the iron arm rests, or divisions, between the individual seats along the side of the car. The collision appears to have been a slight one; nothing was broken about the car except the glass in the front door, and the train started up again and ran on to the next stop in the usual way. The plaintiff and her aunt having reached their destination, got out and walked for some ten minutes through the storm and snow to the home of the aunt. It was Sunday evening and plaintiff stayed there that night and the next day and night, and on Tuesday went home. The plaintiff *Page 61 
then went with her mother to a physician at his office. The testimony tended to show that she went there every day for a week and then every other day for two weeks and then less frequently. It was claimed that the tip end of the spine was injured, resulting in serious consequences. The physician stated that when he first examined her he found a discoloration, not very much discolored, about two inches above the tip of the spine. He did not remember giving any local treatment, but gave her nerve sedatives. The jury rendered a verdict for the plaintiff of $6,000, which has been unanimously affirmed.
The extent of the injury and the damages were sought to be established by the plaintiff largely upon the testimony of medical experts. These experts were conducted by the learned counsel for the plaintiff, in his examination, through a very wide field of speculative inquiry. Much of this testimony appears in the record without exception though it was constantly objected to by defendant's counsel. The testimony was not at all confined to the condition of the plaintiff at the time of the trial, which took place about eight months after the accident, but the experts were permitted to speculate upon the consequences of the alleged injury which might affect the plaintiff in the future. It was suggested that the injury might affect the bladder, the kidneys and other organs of the body and in the end become permanent. The following is a specimen of the testimony given by one of the plaintiff's experts who had seen the plaintiff but once and then long after the accident: "The bladder is a very bad master and a very good servant. If you humor it, or it gets into bad habits, it is almost impossible to correct them. I make this statement more than ordinarily positive, because I have seen a great many of them. Because of this irritability in this child is either from her general nervousness or if it is from some central trouble the result of the blow and the shock she has received, the outcome of it is, in my judgment, permanent. * * * The effects on this child, of this bladder, are of a general effect and local. The general effect of frequent urinating is harassing, *Page 62 
inasmuch as it interferes with a person's going about. It is a pitiable thing sometimes. * * * The coats become thickened, just as much as a blacksmith's arm becomes larger, the bladder grows so that bye-and-bye it don't hold as much water, so that even if it was not sensitive, the person could not retain it and would have to empty it, because it wouldn't retain it any longer. After it has lasted it subjects the person to a long train of evils. A bladder which is enlarged and irritable is liable to have infection and inflammation set in, and when you add inflammation to irritability, you have a condition of affairs that is most serious." The counsel for the defendant here interposed and said: "I object to this kind of testimony. It is of the most general character possible. I have objected to the question, and I want to object now to its being allowed to continue." The plaintiff's counsel thereupon replied: "If there is any part of the evidence that is not responsive, the counsel can move to strike it out, of course." The court thereupon stated: "I will let it stand," and thereupon the defendant's counsel excepted. In response to another question the witness, continuing, stated: "If the condition of the bladder — when that condition of the bladder sets in which I have described, it is only a step further for it to ascend to the kidneys. That always does not take place, but as long as the lower urinary organs are in that state, there is no question about the jeopardy of the upper urinary organs."
It is, undoubtedly, true that in an action to recover damages for personal injuries the evidence of experts as to the future consequences which are expected to follow the injury are competent, but to authorize such evidence, however, the apprehended consequences must be such as, in the ordinary course of nature, are reasonably certain to ensue. Consequences which are contingent, speculative or merely possible are not proper to be considered in estimating the damages and may not be proved. (Strohm v. N.Y., L.E. W.R.R. Co., 96 N.Y. 305; Tozer v.N.Y.C. H.R.R.R. Co., 105 N.Y. 617; Jewell v. N.Y.C. H.R.R.R. Co., *Page 63 27 App. Div. 500; Kleiner v. Third Ave. R.R. Co., 162 N.Y. 193;Smith v. N.Y.C. H.R.R.R. Co., 164 N.Y. 491.) We think this rule of evidence was violated in this case, since the learned trial judge permitted to stand for the consideration of the jury evidence which was speculative and conjectural. Indeed, the medical experts in the case, upon the examination of the plaintiff's counsel, were permitted to state numerous things which might result as a consequence of this injury. This is apparent from the extracts which we have referred to and much more evidence of like character which is to be found in the record; therefore, the learned trial judge, in permitting the examination and in allowing the testimony to go into the record to be considered by the jury, gave the sanction of the court to testimony which was highly speculative and conjectural and so far prejudicial to the defendant as to require a new trial. The objections made and exception taken were sufficient to direct the attention of the court to the point.
The judgment should, therefore, be reversed and a new trial granted, costs to abide the event.
PARKER, Ch. J., MARTIN, CULLEN and WERNER, JJ., concur: GRAY, J., not sitting; HAIGHT, J., not voting.
Judgment reversed, etc.