IN THE MATTER OF THE TAX APPEAL OF THE
VON HAMM-YOUNG COMPANY, LIMITED,
FROM INCOME TAX ASSESSMENTS.

No. 2404.

Submitted January 14, 1941.          Decided June 20, 1941.

Coke, C. J., Peters, J., and Circuit Judge Brooks in
Place of Kemp, J., Disqualified.

OPINION OF THE COURT BY PETERS, J.

This appeal presents for review the single question of whether a corporation may deduct from gross income the annual cost of current life insurance effected by it in its favor upon the life of its president and general manager under the income tax law as it existed during the taxable years 1932 to 1936, both inclusive.

The von Hamm-Young Company, Limited, an Hawaiian corporation, effected insurance upon the life of its president and general manager, C. C. von Hamm, with itself as beneficiary. There are two policies of $100,000 each. It was agreed between the parties in advance that the insured should not enjoy any of the benefits or privileges to be reserved to him under the policies and the insured, pursuant to that agreement, assigned all of his interest in the policies to the beneficiary. Both policies contain investment features. Those portions of the annual premiums, deduction of which from gross income was claimed by the taxpayer, constituted what is known as gross premiums,[1] less dividends, exclusive of any portion of the premiums payable under the investment features of the policies. The premiums involved were those paid by the corporation during the taxable years 1932 to 1936, both inclusive.

The tax commissioner held that the cost of current life insurance protection was not an allowable deduction under the statute and disallowed the claimed deductions. In this conclusion he was affirmed by the tax appeal court and hence the present appeals by the taxpayer.

Under our local income tax law, as it existed during the calendar years involved, taxable income was computed by the inclusion in gross income, with certain statutory exceptions and exclusions with only one of which we are concerned, of "all gains, profits and income derived or received from any and every source in the Territory, whether

---

1 *Connecticut Ins. Co.* v. *Commonwealth*, 133 Mass. 161; *Rose* v. *Life Insurance Co.*, 153 Mo. App. 90, 132 S. W. 613, 616; *United States Life Ins. Co.* v. *Spinks*, 126 Ky. 405, 96 S. W. 889, 892.

or not connected with a trade or business, and also all gains, profits and income derived or received from all property owned and every trade or business carried on in the Territory and also all commissions, fees, wages, salaries, bonuses, and every and all other kinds of compensation paid for or attributable to personal services performed within the Territory"[2] and deducting therefrom the allowable statutory deductions which included "all actual operating and business expenses paid or incurred or accrued during the taxable year in carrying on any trade or business including reasonable amounts for salaries or other compensation for personal service or attributable to personal services actually rendered, traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business and rentals or other payments required to be made as a condition to the continued use or possession for the purpose of the trade or business, of property to which the individual or corporation has not taken or is not taking title, or in which the individual or corporation has no equity."[3] The result constituted net income to which the rate was applied. One of the statutory exceptions to and exclusion from gross income was the "amounts received by an individual or corporation under any life insurance policy or contract paid by reason of the death of the insured, whether in a single sum or in instalments."[4] An additional allowable statutory deduction from gross income was "losses sustained during the taxable year if incurred in the trade or business or in any transaction entered into for profit though not connected with such trade or business."[5]

There is a paucity of constructive precedent upon the question involved and such administrative construction

---

[2] R. L. H. 1935, § 2033, am. Haw. Laws 1935, Ser. A-45, Act 120, § 2.

[3] R. L. H. 1935, § 2034, 1 (e).

[4] *Id.*, § 2033 (f).

[5] *Id.*, § 2034 (g).

14

and cases as have been called to our attention are to say the least more confusing than otherwise.

The taxpayer places great reliance upon an opinion of the attorney general of the Territory rendered in October, 1925, and upon the construction placed by the Treasury Department of the United States upon a substantially similar provision contained in the Revenue Act of 1913 and prior to its amendment of October 3, 1917. In October, 1925, the pertinent statute involved,[6] differently from its successor,[7] was silent upon the disposition of proceeds of life insurance policies paid by reason of the death of the insured. By Haw. Laws 2d Spec. Sess. 1932, Act 44, § 4, which subsequently was incorporated into the 1935 compilation as section 2033, 2 (f), the section was remodeled so that in computing taxable income there was excepted and excluded from gross income "amounts received by an individual or corporation under any life insurance policy or contract paid by reason of the death of the insured, whether in a single sum or in instalments," and the attorney general of the Territory, upon the assumption that "any payments to the corporation, under such policies upon the death of the insured, would be taxable as income for the period in which it was received," held that "the yearly premiums paid upon said policy are therefore deductible as necessary expenses actually incurred in carrying on the business." It appears affirmatively that the attorney general gave an oral opinion upon the same subject matter since the enactment of Haw. Laws 2d Spec. Sess. 1932, Act 44, to the effect that the cost of life insurance was not an allowable deduction from gross income under the Act and the taxing authorities have consistently, since that time, administered the provisions of the Act accordingly.

6 R. L. H. 1925, § 1391.
7 R. L. H. 1935, § 2033.

In December, 1914, the Treasury Department of the United States took the position that under the Revenue Act of 1913, "in cases wherein corporations pay premiums on insurance policies insuring, in favor of the corporations, the lives of officers or others, such premiums may be allowably deducted from the gross income of the corporations paying the same" but also required that "in all such cases the proceeds of the policies when paid at maturity or upon death of the insured shall be returned by the corporation as income for the year in which such proceeds were received."[8]

Prior to the amendment of October 3, 1917, hereinafter referred to, the treasury department adhered to the fiat announced in Treasury Decision 2090, except as modified in August, 1917, hereinafter more particularly referred to.[9]

The Revenue Act of 1913[10] allowed as a deduction, in ascertaining the net income of a corporation, "all the ordinary and necessary expenses paid within the year in the maintenance and operation of its business and properties." The Act also provided in respect to individuals that "the proceeds of life insurance policies paid upon the death of the person insured * * * on life insurance, endowment, or annuity contracts, upon the return thereof to the insured at the maturity of the term mentioned in the contract, or upon surrender of contract shall not be included as income."[11] Similar provision, however, was not expressly made in respect of the receipt of proceeds of life insurance policies paid to corporations. And the treasury department took the position that proceeds of life insur-

---

8 T. D. 2090.

9 C. B. I-1, Sol. Op. 136, p. 197, overruling C. B. 3, O. D. 11, p. 139, C. B. 2, O. D. 396, p. 104, C. B. 5, O. D. 1011, p. 119, and C. B. 4, O. D. 843, p. 123, cited by appellant. (See Holmes Federal Taxes [6th ed.], p. 904, n. 63.)

10 38 Stat. L., pt. 1, c. 16, p. 114, § II B, pp. 167, 172.

11 Ibid.

ance policies when paid to corporations were taxable as income. In August, 1917, the commissioner of internal revenue advised all collectors that Treasury Decision 2090 was modified in so far as it authorized corporations to deduct from gross income the annual premiums paid on policies insuring the lives of officers or employees in favor of such corporations to the extent "that instead of the corporations carrying such insurance being permitted to deduct from gross income of the year in which paid the amount of the annual premium payments, they will hereafter be permitted to deduct from the gross proceeds, when received, of any policies of which the corporations are the beneficiaries the entire amount of the premiums paid during the term of the policies, less any premium payments which under the former ruling, have been deducted from gross income in any return of annual net income, and the net proceeds of the policies thus ascertained will be returned as taxable income of the year in which received."[12] The United States Attorney General took the same position in respect to the provisions of the Revenue Act of 1918, which contained similar language, in respect to the provisions involved, to the Revenue Act of 1913.[13] By the Revenue Act of October 3, 1917,[14] it was provided: "That premiums paid on life insurance policies covering the lives of officers, employees, or those financially interested in any trade or business conducted by an individual, partnership, corporation * * * shall not be deducted in computing the net income of such individual, corporation." By the Revenue Act of February 24, 1919,[15] it was expressly provided that "premiums paid on any life insur-

---

12 T. D. 2519.

13 See brief of special assistant to the attorney general in *U. S.* v. *Supplee-Biddle Co.*, 265 U. S. 189, 190.

14 40 Stat. L., pt. 1, c. 63, tit. XII, § 1211, pp. 300, 336, 338.

15 40 Stat. L., pt. 1, c. 18, § 215, pp. 1057, 1069.

ance policy covering the life of any officer or employee, or of any person financially interested in any trade or business carried on by the taxpayer, when the taxpayer is directly or indirectly a beneficiary under such policy" is not deductible from gross income. Subsequent revenue Acts contain similar provisions.[16]

No cases have been called to our attention construing Treasury Decision 2519 and personal research has developed none. Obviously, after the amendment of October 3, 1917, all controversy was set at rest as to the deductibility as a business expense of premiums paid by corporations for current insurance protection upon the lives of executives.[17] Apparently the only controversy remaining was whether the proceeds of life insurance policies effected by corporations upon the lives of their executives were taxable as income and that was settled by *U. S.* v. *Supplee-Biddle Co.,* 265 U. S. 189, against the contention of the United States Attorney General.

In several cases involving the construction of revenue Acts existing prior to the amendment of October 3, 1917, there is dicta to the effect that the cost of earned life insurance is a current expense.[18] These cases are not helpful.

From the foregoing it is apparent that in the determination of the question presented we are confined to a construction of the provisions of the local income tax law, as it existed during the period involved, and that little help

---

[16] See note of "Similar Provisions," 26 USCA, I. R. C., tit. 26, p. 49.

[17] See *Rieck* v. *Heiner,* 25 F. (2d) 453; *Julius S. Rippel et al.,* 12 B. T. A. 438; *J. H. Parker,* 13 B. T. A. 115; *Hewett Grain & Provision Co. of Escanaba,* 14 B. T. A. 281; *Benjamin Barron.* 14 B. T. A. 1022; *William S. Phillips,* 24 B. T. A. 98; *Merrimac Hat Corporation,* 29 B. T. A. 690; *Peerless Pattern Co.,* 29 B. T. A. 767.

[18] "The cost of earned life insurance is not a capital investment any more than the cost of earned fire or marine insurance. It is a current expense, and should not be treated as anything else." *E. A. Armstrong,* 1 B. T. A. 296, 298.

"The capital value of the policy is not increased by the payment of

can be derived from the opinions of the territorial attorney general or departmental or judicial construction of the federal income tax law, except as such material in the latter instance may throw light upon the meaning, import and connotations of the terms common to both the federal and local income tax laws.

While the taxpayer's position before this court is that the question presented is a pure question of law, it insists that we consider the evidence taken before the tax appeal court upon the relation existing between Mr. von Hamm and the company of which he was president and manager and the reasons which induced the directors to effect the insurance, the premiums in respect of which are claimed as deductions. Two of the officers of the company, *viz.*, the secretary and the vice-president and assistant manager, testified to the effect that Mr. von Hamm was the "guiding genius" of the corporation; that the success of the company was principally due to his efforts and management; that there was a direct relation between his skillful management and the company's success; and that the insurance was effected to indemnify the company against the apprehended and anticipated loss of income and earning power which the directors felt would result from his death. Upon this evidence the taxpayer argues "the economic justification" of indemnification by life insurance "against the loss of service, loss of goodwill and possible contraction of credit" in the event of the death of the insured, "not to mention the cost of finding and training a successor."

---

that portion of the premium which is allocated to current earned insurance." *E. J. Gallagher Realty Co.*, 4 B. T. A. 219, 221.

"It [premium] was apparently paid for the protection of the petitioner * * *. If this is so, there is no element of capital expenditure in the payment and there is no evidence that the petitioner acquired a capital asset as a result of the payment." *Lock, Moore & Co., Ltd.*, 7 B. T. A. 1008, 1013.

The apprehended consequences to the company of the death of Mr. von Hamm are not necessarily such as are reasonably certain to ensue in the ordinary course of events. He may cease to be the manager of the company prior to his death. He has no contract of employment for a fixed term and his connection with the company is terminable at will. It is equally probable that no loss of service, loss of goodwill nor contraction of credit to the company will ensue in the event of the death of Mr. von Hamm. It is also equally probable that a successor of equal if not superior qualifications may be found immediately without cost of selection or training. It may be assumed that Mr. von Hamm was selected as the president of the company by reason of the possession of qualifications fitting him for that position. The same may be said, however, for all of the other officers and executives of the corporation. Even its employees may be considered in the same category. But it does not necessarily follow that by reason of such selection no one of similar qualifications would be available in the event of death and that loss would inevitably ensue. This evidence was mere opinion evidence based upon speculation and surmise. It involved apprehended consequences which were not reasonably certain to ensue in the ordinary course of events. The evidence of experts as to future consequences which are expected to follow a certain event are competent but to authorize such evidence the apprehended consequences must be such as in the ordinary course of events are reasonably certain to ensue. Consequences which are contingent, speculative or merely possible are not proper to be considered in estimating the results of the contingency involved.[19] In our

19 *Briggs* v. *N. Y. C. & H. R. R. R. Co.*, 177 N. Y. 59, 69 N. E. 223, 225; *Strohm* v. *The N. Y., L. E. & W. R. R. Co.*, 96 N. Y. 305, 306; *Blate* v. *Third Ave. R. Co.*, 44 N. Y. S. 615, 616; *Collins* v. *The City of Janesville*, 99 Wis. 464, 75 N. W. 88, 89; *Turner* v. *Lovington C. M. Co.*, 156 Ill. App. 60, 63; *Mahany* v. *K. C. Railways Co.*, 286 Mo. 601, 228 S. W. 821, 827.

opinion the evidence was improperly received and cannot be considered by this court in determining whether the cost of current insurance protection is deductible as a business expense within the meaning of the statute.

The scope of review, therefore, is necessarily limited and restricted to the simple question of mixed law and fact, *viz.,* whether the annual cost of current life insurance protection paid by a taxpayer, under the circumstances of this case, is *per se* an "actual operating and business expense (s) * * * paid in carrying on the business" of the taxpayer unaffected by and without consideration of any apprehensions of the probable effect upon the taxpayer of the death of the insured.

The cost of life insurance in the instant case is obviously not a "loss" within the meaning of section 2034 (g).

Putting aside for the moment an analysis of the explicit terms employed in the provisions of section 2034, 1 (e), and considering the income tax law as a whole, certain incidents of the law impel us to the conclusion that the legislature did not intend that the cost of life insurance be allowed as a deduction from gross income. Haw. Laws 2d Spec. Sess. 1932, Act 44, was approved on May 11, 1932, but made effective retroactively as of January 1, 1932. The Act confined itself exclusively to the taxation of income and, with certain procedural exceptions, was complete in itself. It expressly repealed chapter 103 of R. L. H. 1925 to take effect midnight of December 31, 1931, with certain reservations with which we are not concerned. But the provisions of chapter 103 contained provisions indicative of the intention of the legislature in the use of the explicit terms contained in R. L. H. 1935, § 2034, 1 (e). By the provisions of section 1389 contained in chapter 103 the tax was levied "on the net * * * income *above actual operating and business expenses* * * * from * * * every business * * * carried on in the Territory." (Italics ours.) By section 1391 of the same chapter it was

provided that "in computing incomes the necessary expenses actually incurred in carrying on any business * * * shall be deducted." Apparently the language contained in section 1389, *i.e.*, "actual operating and business expenses," referred to the deduction allowable under section 1391 of "necessary expenses actually incurred in carrying on any business." By the provisions of Haw. Laws 2d Spec. Sess. 1932, Act 44, § 5 (1), incorporated in R. L. H. 1935 as section 2034, 1 (e), the legislature adopted the language previously employed in section 1389, as amended, thus omitting the word "necessary" found in section 1391, adding the adjective "business" as qualifying the word "expenses" and using the word "actual" adverbially as qualifying "operating" and adjectively as qualifying "business" instead of adverbially qualifying the verb "incurred." Apparently the language employed in section 2034, 1 (e), in respect to deductible business expenses was intended to convey the same meaning as the synonymous language found in sections 1389 and 1391 of the pre-existing income tax law in respect to the same subject matter. Moreover, implicit in the exclusion from gross income of the proceeds of life insurance is the exclusion from business expenses of its annual cost. A direct correlation exists between items includable in gross income and expenses allowable as deductions. In other words, "actual operating and business expenses paid or incurred or accrued * * * in carrying on * * * [the] trade or business" refer only to those expenses directly attributable to and responsible for the production of the taxable gains, profits and income of the business "exclusive of life insurance" and by the deduction of which from gross income net income is ascertained. Finally, had the legislature intended to negative the assumption that reasonably arises from the exclusion of the proceeds of life insurance from gross income, *viz.*, that earned cost thereof was not a deductible

item, it would have included in section 2034 some provision to that effect. Meticulous care was exercised in the enumeration in section 2034 of the allowable deductions from gross income. In paragraph 3 thereof even the items not deductible from gross income are enumerated; in paragraph 1 (e), either by way of explanation or enlargement there is included in "actual operating and business expenses" "paid * * * in carrying on any * * * business" salaries or other compensation for personal services and traveling expenses. All this, in our opinion, indicates a legislative intention to exclude from operating and business expenses the cost of contracts, the monetary returns from which are expressly excluded from gross income.

But in the last analysis the "ordinary and received acceptation,"[20] "the popular or received import"[21] of the words "actual," "operating" and "business" and the implications of the phrase "paid * * * in carrying on any * * * business"[22] are decisive of the question.

For this court to define the respective words and terms quoted from the statute as used and employed therein would be but to assume the definition of variables "affected by time and place and circumstance."[23] "Verbal formulas" are impossible. The tax commissioner found that the annual cost of life insurance effected under the circumstances of this case was not an "actual operating and business expense (s)" "paid * * * in carrying on * * * [the] business" of the taxpayer and his ruling is presumed to be correct.[24] The taxpayer has the burden of proving it to be wrong. And unless we can say from the material

---

[20] *Maillard et al.*, v. *Lawrence*, 16 How. 250, 260 (U. S.).

[21] *Deputy* v. *du Pont*, 308 U. S. 488, 493.

[22] *id.* at 494.

[23] *Welch* v. *Helvering*, 290 U. S. 111.

[24] *Burnet* v. *Houston*, 283 U. S. 223, 227; *Reinecke* v. *Spalding*, 280 U. S. 227, 232; *Welch* v. *Helvering*, *supra*, p. 115.

evidence adduced and from such available information of which we may take judicial cognizance, that the cost of life insurance paid under the circumstances of this case is an actual operating and business expense paid in carrying on the business of the taxpayer, the tax must be confirmed.

The von Hamm-Young Company concededly was, during the period involved, engaged in business as "import and commission merchants," "dealer in automobiles and machinery." It also represented several insurance agencies, fire, life and marine. But it nowhere appears that the cost of the insurance effected upon the life of Mr. von Hamm actually entered into or was directly connected with the operation of the business of the company or that it was the proximate result of the business itself. On the contrary, it affirmatively appears that it was not a present, actual operating business expense paid in carrying on the business but was for the supposed protection of the company in the event of the happening of future contingencies based upon speculation and surmise. It also appears that only fifteen to twenty corporations doing business in Honolulu effect insurance upon the lives of their managers as was done in this case. Nothing was said about corporations whose respective principal places of business were elsewhere. But this evidence is hardly sufficient to sustain a finding that it is or was the accepted practice of corporations in the Territory to effect similar insurance upon the lives of their managers. From the statutory necessity of corporations to use the word "limited" in connection with their names and the statutory obligation to file corporation exhibits, it is a matter of common knowledge that there are over five hundred corporations doing business in Honolulu and that the number of corporations whose principal places of business are elsewhere in the Territory exceeds three hundred.

In construing the meaning of the word "ordinary" qualifying the word "expenses" allowable as a deduction from gross income under the federal income tax law Mr. Justice Cardoza, speaking for the court in the case of *Welch* v. *Helvering,* 290 U. S. 111, 115, epitomized the standard by which claimed deductions should be measured: "The standard set up by the statute is not a rule of law; it is rather a way of life. Life in all its fullness must supply the answer to the riddle." The evidence, however, fails to supply the answer. For a corporation to effect such insurance is concededly not ultra vires. And it may be that it is the practice for those corporations effecting such insurance to treat the cost thereof as a business expense. But the record fails to even remotely suggest that it is the accepted practice for corporations to effect such insurance and to treat the cost thereof as both a business and operating expense incurred in carrying on the business.

Moreover, we have explored in vain the printed page for information which might justify the inclusion of the cost of life insurance as a deductible item from gross income. Definitions contained in dictionaries and lexicons foreclose the inclusion of the costs of life insurance effected, as in this case, as an actual operating and business expense incurred in carrying on a business. Federal cases construing similar terms found in the several federal revenue Acts deny deductibility from gross income of items of expense which are neither directly connected with the operation of the business of the taxpayer nor are the proximate result of such business.[25] Even rate cases con-

---

25 In applying the word "business" to expenses claimed as deductions the courts have used the following language: "Not * * * connected with or growing out of the business." *White* v. *Commissioner of Internal Revenue,* 61 F. (2d) 726, 728, 729. To be deducted as a business expense an expenditure must have some relationship to the business. "Business expenses * * * to be deductible, must have some reasonable

struing the term "operating expenses" found in statutes affecting public utilities offer no consolation to the taxpayer.

The cases of *Standard Brewing Co.*, 6 B. T. A. 980, 984; *Newell* v. *Commissioner of Internal Revenue*, 66 F. (2d) 102; and *U. S.* v. *Supplee-Biddle Co., supra,* cited by the taxpayer are not in point.

In the *Standard Brewing Co.* case the question presented was whether the taxpayer, upon its surrender of a life insurance policy that it had effected upon the lives of certain of its officers, was entitled to deduct from the gross income the excess by which the aggregate premiums paid exceeded its cash surrender value. The court held that "to the extent that the premiums paid * * * created in it [the taxpayer] a right to a surrender value, they constituted a capital investment. To the extent they exceeded the surrender value, they constituted payment for earned insurance and were current expenses." But the court did not hold and there is not the slightest intimation that as "current expenses" this excess in the opinion of the court constituted an allowable deduction.

In the *Newell* case the question for decision arose under a state inheritance tax statute as to the value of certain stock of which decedent died possessed. In estimating the value of the stock there had been included proceeds of insurance policies upon the life of the decedent and the personal representatives of the deceased argued that there

relation to the business in question." *Crowley* v. *Commissioner of Internal Revenue*, 89 F. (2d) 715, 718. "Not paid for services rendered in connection with the operation of the ore lands or other property." *Hutchings* v. *Burnet*, 58 F. (2d) 514, 516. "No tendency to increase * * * income." *Ellis* v. *Burnet*, 50 F. (2d) 343, 344. An expense which "proximately result[s] * * * from the taxpayer's business." *Deputy* v. *du Pont*, 308 U. S. 488. (See also *Burnet* v. *Clark*, 287 U. S. 410; *Kornhauser* v. *United States*, 276 U. S. 145, 153.) Expenses "directly attributable to the petitioner's performance of services under his contract of employment." *Reginald Denny*, 33 B. T. A. 738, 743.

should be deducted from this sum a substantial part thereof because of the death of the decedent and the resulting loss to the company which the decedent in his lifetime had dominated and controlled. The court held that this seemed eminently sound and fair and observed that there should be a finding which would cover this loss, if any, to the company. Upon remand the lower court was directed to proceed in accordance with the views expressed. Obviously, if a loss had resulted to the company it was a matter which could be evidenced in the usual and ordinary way and was capable of a finding consonant therewith. In the instant case there is no means of determining how much, if any, of the proceeds of the insurance effected upon Mr. von Hamm's life will, upon his death, be necessary to offset the apprehended loss.

In the *Supplee-Biddle Co.* case the principal question involved was whether proceeds of life insurance policies when received by a corporation were an includable item of gross income similarly as when received by an individual. The controversy involved the construction of section 233 of the Revenue Act of 1918. The construction of the statute, however, did not involve the relation theretofore existing between the corporation which received the insurance and the insured who, prior to his death, had been its president and guiding spirit. The fact that the insured had been a man of ability, energy and initiative and that under his management the business of the cor-

---

Many of the courts speak of a "business expense" as an "operating expense." "The regulations limit deductible expenses to the current operating expenses incurred in producing the income. * * * only operating expenses are deductible." *Simmons Co.* v. *Commissioner of Internal Revenue*, 33 F. (2d) 75, 76. Expenses "necessary to maintain * * * operation." *Marsh Fork Coal Co.* v. *Lucas*, 42 F. (2d) 83, 85. The expenses claimed as deductions have "no relation to the operation of the hotel as a business." *Commissioner of Internal Revenue* v. *Smiley*, 86 F. (2d) 658, 659.

poration had been much increased and that the insurance was effected "to make secure its financial position, and to indemnify itself against losses to its earning power" in the event of the death of the insured was considered solely in connection with the claim incidentally made that the insurance effected by the company was a wagering contract and hence invalid. These facts were taken into consideration by the court as a basis of its determination that the corporation had an insurable interest in the life of its president and manager and that hence "life insurance in such a case as the one before us is valid and is not a wagering contract."

An expenditure does not necessarily import an item of expense deductible under the statute. The Territory "has power to grant, restrict, or deny deductions. So, the right to an asserted deduction must come within an applicable provision of the statute, else it does not exist." *Barbour Coal Co.* v. *Commissioner of Internal Revenue,* 74 F. (2d) 163.[26]

The allowance of deductions from gross income does not depend upon equitable considerations. They "depend(s) upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed." *New Colonial Co.* v. *Helvering,* 292 U. S. 435, 440. (*Deputy* v. *du Pont, supra.*)

---

The implications of the term "in carrying on a business" are emphasized in *Whitney* v. *Commissioner of Internal Revenue,* 73 F. (2d) 589, 591; *Kales* v. *Commissioner of Internal Revenue,* 101 F. (2d) 35; *Hutchings* v. *Burnet, supra; Lewellyn* v. *Pittsburgh, B. & L. E. R. Co.,* 222 Fed. 177, 185; *Deputy* v. *du Pont, supra.*

The word "actual" is not contained in the federal income tax law but its connotations include those attributable to the word "accrued" found in the several federal revenue Acts. For its meaning in respect to "expenses" see *Ter.* v. *Honolulu R. T. & L. Co.,* 23 Haw. 387, 400.

[26] See also *Bishop* v. *Gulick,* 7 Haw. 627; *Oahu R. & L. Co.* v. *Shaw,* 12 Haw. 76; *Robertson* v. *Pratt,* 13 Haw. 590; *In re Taxes, Pineapple Companies,* 19 Haw. 193; *Cassels* v. *Wilder,* 23 Haw. 358; *In re Yerian,* 35 Haw. 855.

Consistently with the views herein expressed the decision of the tax appeal court is affirmed.

*Thompson & Russell* for the taxpayer.

*R. V. Lewis,* Deputy Attorney General, for the tax commissioner.